# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2763

_____

Kenneth D. Wivell; Tina M. Wivell

*Plaintiffs - Appellants*

v.

Wells Fargo Bank, N.A., doing business as Wells Fargo Home Mortgage;
Kozeny & McCubbin, L.C.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: October 3, 2014
Filed: November 19, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Kenneth and Tina Wivell ("the Wivells") appeal from the district court's denial of their motion to remand and its dismissal on the merits of their claims against Wells Fargo Bank, N.A. ("Wells Fargo") and Kozeny & McCubbin, L.C. ("Kozeny"). After we initially affirmed the district court's judgment, *Wivell v. Wells Fargo Bank, N.A.*, 756 F.3d 609, 620 (8th Cir. 2014), the Wivells moved for rehearing by the panel and

rehearing *en banc*. The panel granted rehearing, holding in abeyance further proceedings pending the Supreme Court of Missouri's disposition of two appeals that now have been decided. Having received supplemental briefing on these decisions, we now affirm in part and vacate and remand in part. We also vacate our original opinion and substitute this amended opinion in its place.

## I. Background

The Wivells purchased a residential property in February 2006 using funds borrowed from Wells Fargo. As part of the borrowing process, the Wivells signed a promissory note secured by a deed of trust. The deed of trust contains a no-oral-modifications clause that provides:

> Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreement we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

Both of the Wivells' signatures appear on the page bearing this notice.

The Wivells allege that the following events occurred after the loan was in place. In January 2009, the Wivells called Wells Fargo to discuss the possibility of a loan modification. A Wells Fargo representative explained that a loan moratorium, distinct from a loan modification, was possible in the event of a default. The Wivells called back in March 2009 regarding the moratorium program and were informed that they must be ninety days past due to obtain a moratorium. A Wells Fargo representative instructed them to stop making payments, and the Wivells followed

-2-

this advice. After missing payments, the Wivells called Wells Fargo again. A representative now explained that a moratorium program did not exist and suggested that the Wivells instead should seek a loan modification. From April 2009 until June 2010, the Wivells attempted unsuccessfully to reach a loan-modification agreement with Wells Fargo, during which time the Wivells rejected two modification proposals offered by Wells Fargo—one to pay $1,500 per month until the past-due amount was paid in-full and another to pay a one-time $14,000 payment.

On June 12, 2010, Kozeny, the trustee under the deed of trust, notified the Wivells that their property was scheduled for a foreclosure sale on June 30. The Wivells faxed another modification packet to Wells Fargo on June 17, and they called Wells Fargo on June 23 to inquire into the status of this latest modification request. They asked whether this latest modification request "would stop all foreclosure processes and were informed by Wells Fargo that it would." At "various points between April 2010 and June 30, 2010," the Wivells contacted Kozeny and reported "their frustrations and concerns relating to Wells Fargo." Kozeny sold the Wivells' property at a foreclosure sale on June 30, as scheduled. The Wivells do not allege that their June 23 telephone conversation or any other communication with Wells Fargo was ever reduced to a written agreement.

The Wivells, citizens of Missouri for purposes of federal diversity jurisdiction, filed suit in Missouri state court against both Wells Fargo of South Dakota and Kozeny of Missouri. Wells Fargo removed the lawsuit to federal court, arguing that Kozeny—the only nondiverse defendant—was fraudulently joined to defeat federal diversity jurisdiction. The Wivells filed a motion to remand the case to Missouri state court, which the federal district court denied—concluding that Kozeny had been fraudulently joined. After voluntarily dismissing several of their claims against Kozeny under Federal Rule of Civil Procedure 41, including a claim under the Missouri Merchandising Practices Act ("MMPA"), the Wivells maintained the following claims at the motion-to-dismiss stage: wrongful foreclosure, fraudulent

misrepresentation, violation of the MMPA, negligence, and negligent misrepresentation against Wells Fargo; and negligence and breach of fiduciary duty against Kozeny. Both Wells Fargo and Kozeny filed motions to dismiss these remaining claims under Federal Rule of Civil Procedure 12(b)(6), which the district court granted. This appeal followed.

## II. Discussion

### A. Denial of Motion to Remand and Dismissal of Claims against Kozeny

The Wivells first challenge the district court's denial of their motion to remand.[1] Although the Wivells are not diverse from Kozeny, Wells Fargo removed this case to federal court based on the allegedly fraudulent joinder of Kozeny. "The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012). "Whether a plaintiff has fraudulently joined a party to defeat diversity jurisdiction is a question of subject matter jurisdiction we review de novo." *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007). "A party has been fraudulently joined if there is 'no reasonable basis in fact and law' for the claim brought against it." *Murphy*, 699 F.3d at 1031 (quoting

---

[1]Wells Fargo argues that the Wivells' motion to remand is not properly before us because the Wivells did not designate the order denying remand in their notice of appeal. Moreover, the Wivells objected for the first time in their supplemental brief to the district court's conclusion that their MMPA claim against Kozeny, which they later voluntarily dismissed at the motion-to-dismiss stage, did not have a reasonable basis in fact and law. However, because the Wivells' arguments with respect to their motion to remand implicate subject matter jurisdiction, we will consider these arguments. *See Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012).

*Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)).  "Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent."  *Filla*, 336 F.3d at 810.  The parties agree that Missouri law applies.  The Wivells maintain that three of their original claims against Kozeny—namely, negligence, breach of fiduciary duty, and a violation of the MMPA—are supported by a reasonable basis in fact and law.  We disagree.

### 1. Negligence

Under Missouri law, "the first essential element of a claim of negligence" is "the existence of a duty."  *Leeper v. Asmus*, --- S.W.3d ---, 2014 WL 2190966, at \*3 (Mo. Ct. App. May 27, 2014).  The Wivells allege that "Kozeny, acting as trustee, had assumed a duty and responsibility for overseeing the servicing of [the Wivells'] loan."  However, this particular duty is not enumerated in the deed of trust, which fixes the duties owed by Kozeny as a trustee under Missouri law.  *See Spires v. Edgar*, 513 S.W.2d 372, 378 (Mo. 1974) (per curiam) ("The duties and powers of a trustee are fixed by the terms of the contract, namely, the deed of trust.").  The Wivells argue for the first time on appeal that Kozeny also was negligent because it breached its fiduciary duty of neutrality.  However, in their complaint, the Wivells' negligence count does not allege that Kozeny owed a duty of neutrality.  *See Campbell v. Davol, Inc.*, 620 F.3d 887, 891 (8th Cir. 2010) (holding that issues not raised in trial court cannot be considered by appellate court as basis for reversal).  Because the Wivells do not allege that Kozeny owed a tort duty enumerated in the deed of trust, no reasonable basis in fact and law supports the Wivells' negligence claim against Kozeny.

### 2. Breach of Fiduciary Duty

To prove a breach of fiduciary duty under Missouri law, a plaintiff must establish, among other elements, that a fiduciary duty existed and was breached.

*Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 381 (Mo. Ct. App. 2000). Missouri law recognizes a fiduciary relationship between the trustee of a deed of trust and both the debtor and creditor. *Spires*, 513 S.W.2d at 378. "The trustee is considered to be the agent of both the debtor and creditor and should perform the duties of the trust with impartiality and integrity." *Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 813 (Mo. Ct. App. 1998). The Wivells allege that Kozeny breached this fiduciary duty by "representing that it 'worked for' Wells Fargo." This claim, however, has no reasonable basis in Missouri law. "The fact that the creditor's agent, attorney or employee is the trustee will not invalidate the sale. . . ." *Judah v. Pitts*, 62 S.W.2d 715, 720 (Mo. 1933). Additionally, the Wivells do not allege that Kozeny represented that it worked *only* for Wells Fargo or that it did not also "work for" the Wivells. Therefore, Kozeny's alleged representation is not inconsistent with its dual-agency relationship contemplated by Missouri law.

Next, the Wivells contend that Kozeny violated its fiduciary duty of impartiality and integrity by accepting trustee's fees in the foreclosure sale. This allegation also lacks a reasonable basis in Missouri law for two reasons. First, the Wivells have not cited, nor can we find, any Missouri authority suggesting that a trustee cannot accept a fee without violating its fiduciary duty. Second, the deed of trust expressly provides that Kozeny could apply the proceeds of the foreclosure sale "to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees."

Finally, the Wivells argue that Kozeny breached its fiduciary duty to investigate the circumstances surrounding the foreclosure proceedings before selling their property at foreclosure. However, "when requested by the creditor to foreclose, the trustee may proceed without making any affirmative investigation unless the trustee has actual knowledge 'of anything which should legally prevent the foreclosure.'" *Killion*, 987 S.W.2d at 813 (emphasis omitted) (quoting *Spires*, 513 S.W.2d at 378). Here, the Wivells only allege that at "various points between April

2010 and June 30, 2010," they contacted Kozeny and reported "their frustrations and concerns relating to Wells Fargo." Even assuming that the Wivells related to Kozeny all of their communications with Wells Fargo, this information would have been insufficient to give Kozeny "actual knowledge 'of anything which should legally prevent the foreclosure.'" *Id.* (emphasis omitted). The information allegedly provided by the Wivells to Kozeny is nearly indistinguishable from that which the plaintiffs provided the trustee in *Sparks v. PNC Bank*, 400 S.W.3d 454 (Mo. Ct. App. 2013). In *Sparks*, the Missouri Court of Appeals held that the plaintiffs failed to allege that the trustee had been placed on actual notice of a legal reason preventing foreclosure, despite the plaintiffs' allegation that they provided the trustee actual knowledge of the bank's actions. *Id.* at 459. These actions included the bank's "decision to dishonor a promised mortgage modification . . . , the fact that [h]omeowners were in active modification review, and the fact that [the bank] repeatedly suggested that [h]omeowners should continue to check back into the status of the loan modification and foreclosure proceeding." *Id.* Moreover, none of the Wivells' alleged communications with Wells Fargo regarding the forbearing effect of a modification request was ever reduced to a written agreement. Yet, the deed of trust expressly provides that "[o]ral agreements or commitments . . . to forebear from enforcing repayment of debt . . . are not enforceable." The alleged communications with Wells Fargo therefore were not enforceable and could not legally prevent the foreclosure. *See Reliance Bank v. Paramont Props., LLC*, 425 S.W.3d 202, 206-09 (Mo. Ct. App. 2014) (holding that no-oral-modifications clauses in lending agreements are enforceable). Thus, no reasonable basis in fact and law supports the Wivells' breach-of-fiduciary-duty claim against Kozeny.

### 3. Violation of the MMPA

The MMPA makes unlawful "[t]he act, use or employment . . . of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the

sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. The Wivells allege that Kozeny violated the MMPA by making false and misleading statements, by refusing to help them, and by failing to carry out its duties as trustee.

The Wivells contend that this claim has a reasonable basis in Missouri law based on two recent decisions in which the Supreme Court of Missouri considered when an act that occurs after a borrower and lender enter into a loan agreement is "in connection with" a sale so as to be actionable under the MMPA. In *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. 2014), the court concluded that a loan agreement "creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time." *Id.* at 415. These continuing duties, the court explained, establish that the "sale" under the MMPA "continues throughout the time the parties perform their duties" and that "[a] party's right to collect a loan is part of that sale and is, therefore, 'in connection with' the loan." *Id.* In a second decision issued the same day, the court concluded that negotiations for a loan modification "were not 'in connection with' the sale of [a] loan because that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan." *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 408 (Mo. 2014).

*Conway* and *Watson* do not supply a reasonable basis in law for the Wivells' MMPA claim against Kozeny. Both cases concerned the lender-borrower relationship, not the trustee-borrower relationship at issue here, *see id.* at 406; *Conway*, 438 S.W.3d at 413, and the *Conway* court made clear that its rationale turned on the continuing nature of the lender-borrower relationship. As the court explained, "[b]ecause [the lender and the borrower] must continue to perform . . . duties for the life of the loan, the sale continues throughout the time the parties perform their duties." *Id.* at 415. Consequently, an action taken while performing these continuing duties is "in connection with" the sale of a loan. *See id.*

Unlike the defendants in *Conway* and *Watson*, Kozeny did not assume a continuing duty to service the Wivells' loan. Instead, the deed of trust established a narrow, contingent role for Kozeny in the event that the Wivells defaulted. Because Kozeny did not "continue to perform" these duties "for the life of the loan," *see id.*, the rule established by *Conway* and *Watson* does not apply to a trustee like Kozeny.

Because there was no reasonable basis in fact and law for the Wivells' claims against Kozeny, it follows that Kozeny was fraudulently joined and that the district court properly denied the Wivells' motion to remand.

### 4. Dismissal with Prejudice under Rule 12(b)(6)

After denying the Wivells' motion to remand, the district court proceeded to dismiss with prejudice, under Rule 12(b)(6), the Wivells' negligence and breach-of-fiduciary-duty claims against Kozeny and to dismiss without prejudice, under Rule 41, the Wivells' remaining claims against Kozeny. The claims against Kozeny, however, should have been dismissed without prejudice for lack of subject matter jurisdiction. As mentioned above, the doctrine of fraudulent joinder allowed the district court only temporary jurisdiction to determine whether Kozeny, a facially nondiverse defendant, was fraudulently joined. *See Murphy*, 699 F.3d at 1031. The district court's subject matter jurisdiction under 28 U.S.C. § 1332 did not arise until *after* Kozeny was dismissed as fraudulently joined. *See Hogan v. Raymond Corp.*, 536 F. App'x 207, 211 (3d Cir. 2013) ("The fraudulent joinder inquiry is a jurisdictional one and not a merits determination. Thus, instead of dismissing [the plaintiff's] claims against [the nondiverse defendant] with prejudice under Rule 12(b)(6), the District Court should have dismissed them for lack of subject matter jurisdiction under Rule 12(b)(1)." (internal citation omitted)); *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("On the motion for remand, the district court was confronted with a question of subject matter jurisdiction because it could only retain jurisdiction if the claims against [the

nondiverse defendants] were dismissed. Once it determined that [the nondiverse defendants] were fraudulently joined, the district court had no jurisdiction to resolve the merits of the claims against them. In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice." (internal citation omitted)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) (rejecting the ability of a federal court to rule on the merits of claims over which it lacks jurisdiction). Accordingly, we modify the district court's dismissal of the claims against Kozeny to be without prejudice for lack of subject matter jurisdiction. *See Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011).

## B. Dismissal of Claims against Wells Fargo

Because Kozeny—the only nondiverse defendant—was dismissed, the district court properly retained federal diversity jurisdiction over the Wivells' remaining claims against Wells Fargo. *Murphy*, 699 F.3d at 1031. Accordingly, we now consider the district court's grant of Wells Fargo's Rule 12(b)(6) motion to dismiss. "We review *de novo* the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting [the Wivells'] factual allegations as true and construing all reasonable inferences in favor of [the Wivells]." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905 (8th Cir. 2013) (quoting *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "As a federal court, our role in diversity cases is to interpret state law, not to fashion it." *Dannix*, 732 F.3d at 905 (quoting *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011)). "When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri." *Id.* (quoting *Eubank v. Kan. City Power & Light, Co.*, 626 F.3d 424, 427 (8th Cir. 2010)). Where the Missouri Supreme Court has not spoken, "we must predict how the court would rule, and we

follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Id.*

## 1. Wrongful Foreclosure

"[A] plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose." *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct. App. 2009). Here, the Wivells' complaint establishes that they were in default by virtue of their failure to make payments in March 2009. The Wivells counter that Missouri courts have recognized a lulling exception in cases "where the mortgagor is lulled into a belief that payments are not required to prevent a foreclosure, or that payments may be made in a manner different than that stated in the note or deed of trust." *Woolsey v. Bank of Versailles*, 951 S.W.2d 662, 667 (Mo. Ct. App. 1997). They observe that "[w]hen the owner of a property subject to a deed of trust has been lulled into a belief that payments are not required to prevent a foreclosure, . . . then before foreclosure may be properly held, actual notice of the proposed foreclosure must be given to the owners." *Zdazinsky v. Four Seasons Lakesites, Inc.*, 901 S.W.2d 224, 227 (Mo. Ct. App. 1995). The Wivells argue that Wells Fargo lulled them into a belief that their missed payments would lead to moratorium eligibility and that foreclosure would not occur in light of their later modification requests. The Wivells assert that they did not receive the actual notice required in lulling situations after the alleged June 23 telephone conversation in which a Wells Fargo representative said that the then-pending modification process would stop the scheduled June 30 foreclosure sale.

We reject the Wivells' lulling theory because the deed of trust provides that subsequent agreements to forebear from enforcing repayment of the debt must be in writing in order to be enforceable, yet the Wivells do not allege that any of the purported forbearance discussions were ever reduced to a written agreement.

-11-

Although the Wivells insist that the lulling exception supersedes a no-oral-modifications clause, the cited Missouri lulling cases do not expressly support their theory. To the contrary, in *Zdazinsky*, the evidence relied upon by the Missouri Court of Appeals to support its conclusion that the borrower had been lulled was a written letter from the lender. *Id.* at 226-27. Moreover, in *Reliance Bank v. Paramont Properties, LLC*, the Missouri Court of Appeals concluded that a borrower failed to state a plausible claim that the lender violated its duty of good faith and fair dealing. 425 S.W.3d at 206-09. The note in that case included a substantially similar no-oral-modifications clause as the deed of trust in the case considered here. *Id.* at 204. Referring to the no-oral-modifications clause, the Missouri Court of Appeals concluded: "As this provision plainly indicates, no contractual expectancy ever existed that [the bank's] oral promises . . . would be valid, binding, enforceable or otherwise create a contractual benefit. Simply put, the spirit of the transaction did not contemplate oral modifications of any kind." *Id.* at 207. We believe that the Missouri Court of Appeals's decision in *Reliance Bank* is the best evidence of Missouri law. *See Dannix*, 732 F.3d at 905. We therefore decline to extend Missouri's lulling theory to a case such as this one—in which borrowers seek to assert that they were lulled into a sense of security by oral communications despite a clearly drafted deed-of-trust provision expressly providing that "[o]ral agreements or commitments . . . to forebear from enforcing repayment of debt . . . are not enforceable."

## 2. Fraudulent Misrepresentation

The district court dismissed the Wivells' fraudulent misrepresentation claim for failure to comply with the heightened pleading requirements of Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts,

including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)). Here, the Wivells' complaint is devoid of this heightened particularity. They do not identify the Wells Fargo representatives who engaged in the alleged misrepresentations. *See id.* at 556-57 (holding that plaintiff failed to meet Rule 9(b)'s particularity requirement because he neglected to allege the names of involved individuals).

Even if we were to ignore the Wivells' failure to comply with Rule 9(b), their reliance on Wells Fargo's alleged oral representations was unreasonable in light of the deed of trust's no-oral-modifications clause. *See Coverdell v. Countrywide Home Loans, Inc.*, 375 S.W.3d 874, 884-85 (Mo. Ct. App. 2012) (providing that an element of fraudulent misrepresentation under Missouri law is "the hearer's reasonable reliance on its truth"). As discussed above, in light of the no-oral-modifications clause, "no contractual expectancy ever existed that [the bank's] oral promises . . . would be valid, binding, enforceable or otherwise create a contractual benefit." *Reliance Bank*, 425 S.W.3d at 207. The Wivells counter that Wells Fargo waived the no-oral-modifications clause by discussing the moratorium and modification programs with them and by suggesting that pending modification requests could prevent foreclosure. However, in *JAS Apartments, Inc. v. Naji*, 230 S.W.3d 354 (Mo. Ct. App. 2007), the Missouri Court of Appeals rejected a similar argument, concluding that the parties had not "engaged in any practices that evidenced that they had altered the contract's terms." *Id.* at 359. "For conduct to rise to the level of waiver, . . . [it] 'must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible.'" *Id.* (alterations in original) (quoting *Thompson v. Chase Manhattan Mortg. Corp.*, 90 S.W.3d 194, 207-08 (Mo. Ct. App. 2002)). Here, the Wivells do not allege that Wells Fargo engaged in conduct manifestly consistent with

-13-

and indicative of an intention to waive the deed of trust's no-oral-modifications clause. Throughout its discussions with the Wivells concerning the possibility of a modification, Wells Fargo made clear that payment of the amount in default was required, offering two proposals that were rejected by the Wivells. Wells Fargo also made clear that they were being placed in foreclosure because of their default. We therefore conclude that Wells Fargo did not waive the deed of trust's no-oral-modifications clause and that the Wivells' reliance was unreasonable. Accordingly, the Wivells fail to state a plausible claim for fraudulent misrepresentation.

### 3. Violation of the MMPA

The Wivells allege that Wells Fargo violated the MMPA in two primary ways: (1) by making false statements with respect to the availability of a loan modification; and (2) by informing them that applying for a loan modification would suspend a foreclosure sale and nonetheless foreclosing on their property. The district court concluded that Wells Fargo's conduct was not "in connection with" a sale, as required by the MMPA. *See* Mo. Rev. Stat. § 407.020.1. We agreed in our original opinion. The Wivells now contend that the Missouri Supreme Court's intervening decisions in *Watson* and *Conway* dictate otherwise.

*Watson* and *Conway* prescribe that some but not all of Wells Fargo's conduct occurred "in connection with" the sale of the loan. *Watson* forecloses the Wivells' contention that Wells Fargo violated the MMPA by making false statements with respect to the availability of a loan modification. Any loan-modification negotiations were not "in connection with" the sale of the loan because a loan modification "was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan."[2] *Watson*, 438 S.W.3d at 408. The parties' loan documents did

---

[2]In the alternative, the Wivells contend that the parties' loan-modification negotiations were "in connection with" a loan modification, which, they contend, constitutes a separate "sale" under the MMPA. Although the Supreme Court of

-14-

not obligate Wells Fargo to negotiate or agree to a loan modification, and as discussed above, the deed of trust provided that an agreement to forbear the collection of debt must be in writing. *See id.* (noting that "[t]he deed of trust executed in the original transaction specifically stated that there was no obligation to engage in renegotiations"). Accordingly, any statement by Wells Fargo with respect to the availability of a loan modification is not actionable under the MMPA.

However, under *Watson* and *Conway*, Wells Fargo's act of foreclosing on the Wivells' property despite promising them that applying for a loan modification would suspend a foreclosure sale was "in connection with" the sale of the Wivells' loan. In *Conway*, the court found that "[a] party's right to collect a loan is part of [a] sale and is, therefore, 'in connection with' the loan." 438 S.W.3d at 415. The *Watson* court applied this principle to conclude that "foreclosing on the property despite promising to postpone foreclosure proceedings during the modification discussions" was "in connection with" the sale of the loan. 438 S.W.3d at 407-08. The Wivells made an analogous allegation in their complaint. Being "bound by the decisions of the Supreme Court of Missouri" when interpreting Missouri law, *Dannix*, 732 F.3d at 905 (quoting *Kingman*, 643 F.3d at 615), we conclude that foreclosing on the Wivells' property despite informing them that applying for a loan modification would suspend a foreclosure was "in connection with" a sale under the MMPA.

Because the district court concluded otherwise, we vacate this aspect of the district court's order and remand for further proceedings. In light of the Supreme Court of Missouri's intervening decisions in *Conway* and *Watson*, we leave it to the district court to consider the alternative arguments for dismissing this claim that Wells Fargo raised in its supplemental brief. *See United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 887 (8th Cir. 2014) ("Because this argument

---

Missouri left this issue open in *Watson*, 438 S.W.3d at 407 n.2, we need not resolve it here because the Wivells' complaint only alleges that Wells Fargo's actions occurred "in connection with the servicing of [the Wivells'] mortgage."

raises complex . . . questions, we believe that 'it would be beneficial for the district court to consider this issue in the first instance.'" (quoting *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014)).

### 4. Negligence

As noted above, "the first essential element of a claim of negligence" is "the existence of a duty." *Leeper*, 2014 WL 2190966, at *3. The Wivells argue that Wells Fargo violated its implied contractual duty of good faith and fair dealing by improperly applying payments, calculating interest and fees, and servicing the loan. *See Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012) ("In Missouri, all contracts have an implied covenant of good faith and fair dealing."). Under Missouri law, however, the contractual relationship between a lender and borrower alone does not establish a tort duty on the part of the lender. *Caranchini v. Bank of Am., N.A.*, 2013 WL 5407206, at *4 (W.D. Mo. Sept. 26, 2013) ("[A] lender and borrower ordinarily have a non-fiduciary, arm's length relationship that does not give rise to a duty that would support a negligence claim.") (citing *Hall v. NationsBank*, 26 S.W.3d 295, 297 (Mo. Ct. App. 2000)); *see also Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 814 (Mo. Ct. App. 1996) ("The courts in Missouri have never recognized a mere breach of contract as providing a basis for tort liability."). Because Missouri courts have not recognized a tort duty arising from the contractual relationship between a lender and borrower, the Wivells fail to state a plausible negligence claim against Wells Fargo.

### 5. Negligent Misrepresentation

To prove negligent misrepresentation under Missouri law, the Wivells must show, among other elements, that they "justifiably relied on the information" provided to them by Wells Fargo. *See Renaissance Leasing, LLC v. Vermeer Mfg.*

*Co.*, 322 S.W.3d 112, 134 (Mo. 2010). As discussed above, the Wivells' reliance on the information provided by Wells Fargo was unreasonable and unjustified due to the deed of trust's no-oral-modifications clause. *See Reliance Bank*, 425 S.W.3d at 207. Therefore, the Wivells fail to state a plausible negligent-misrepresentation claim against Wells Fargo.

## III.  Conclusion

For the foregoing reasons, we affirm the district court's denial of the Wivells' motion to remand and affirm the district court's dismissal of the claims against Kozeny, modifying the dismissal to be without prejudice for lack of subject matter jurisdiction. With respect to the district court's grant of Wells Fargo's motion to dismiss, we affirm in part and vacate and remand in part for further proceedings not inconsistent with this opinion.

_____