

# In the Missouri Court of Appeals

## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| KEITH JACKSON, | ) | No. ED103370 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Richard C. Bresnahan |
| DENNIS J. BARTON, III, | ) | |
| | ) | Filed: |
| Respondent. | ) | April 26, 2016 |

Keith Jackson appeals from the trial court's judgment dismissing his petition against Dennis J. Barton, III for failure to state a claim. We affirm.

This case stems from dental services provided to Jackson by Lifesmile Dental Care ("Lifesmile") between June 2011 and April 2012. Jackson alleges the following with respect to those services and the associated charges: Lifesmile provided dental care to Jackson on three separate occasions during this time period. Prior to each dental visit, Lifesmile explained what the cost of the services would be and what Jackson would be responsible to pay after the application of insurance benefits. No contracts were signed, and Lifesmile agreed to extend credit to allow Jackson to pay for the services over an extended period of time. He paid the amounts Lifesmile indicated he owed for each date of service, but Lifesmile demanded further payment. In connection with the first dental services provided on June 22, 2011, Lifesmile fabricated a contract, which included Jackson's forged signature and greatly changed previously

agreed upon pricing terms. What Jackson understood to be an exact amount due was now considered "estimated," and the contract also included harsh penalty provisions and late fees for unpaid balances. Lifesmile relied upon the fabricated June 2011 contract to change pricing terms to demand additional charges, late fees, interest and attorney fees with respect to the second and third dates of service.

Jackson alleges Lifesmile began sending letters to him beginning on June 15, 2012, which indicated that he owed an amount he disputed and included assessment of monthly late fees when he never agreed to be responsible for such fees. Jackson alleges that Lifesmile directed Barton to collect Jackson's alleged debt, that Barton is an attorney whose principal business purpose is to collect debts in Missouri and nationwide, and that Barton is a debt collector pursuant to Section 1692a(6) of the Federal Debt Collection Practices Act.

Barton, on behalf of Lifesmile, filed a petition against Jackson on September 9, 2013, and Jackson was served with the petition in that case on October 7, 2013. Jackson alleges he was forced to retain an attorney and spent significant sums to defend the baseless action filed by Barton. Specifically, he alleges that Barton set the case for trial on July 10, 2014, that Jackson paid substantial fees to prepare for trial and that Barton "no showed" on the trial date. Jackson claims that the "no show" was a tactic designed to harass Jackson by causing him to incur unnecessary fees. Jackson alleges Barton knew the suit was baseless, but he decided to bait Jackson into paying for trial anyway. That case was dismissed without prejudice for lack of prosecution on July 10, 2014. Jackson claims Barton then sent him a demand for payment on July 16, 2014, which Barton knew to be grossly false, and then successfully moved the court to set aside the dismissal on August 7, 2014.

2

Jackson further alleges that Barton's collection activities were in connection with the sale of dental services provided by Lifesmile in 2011 and 2012 and that Barton sought amounts Jackson did not owe Lifesmile, as well as interest, reasonable attorney fees pursuant to contract, court costs and other relief. Jackson alleges it was unlawful for Barton to seek relief from him because Jackson did not owe the debt and Jackson cannot owe "contractual" charges because no contract existed between Lifesmile and Jackson. Jackson adds that Barton knew or should have known that Jackson's signature on the fabricated contract was not real, that Jackson paid all amounts Lifesmile asked him to pay, and that Jackson was not obligated to pay any attorney fees to Barton because there was no agreement that allows for such fees.

Jackson then filed this petition against Barton on January 29, 2015, alleging violations of the FDCPA and Missouri Merchandising Practices Act. Barton moved to dismiss Jackson's amended petition, Jackson responded and the case was dismissed. Specifically, the trial court held that: (1) Jackson's FDCPA claim was barred by the Act's one-year statute of limitations and (2) Jackson's MMPA claim failed in that Barton had no connection with the sale of dental services to Jackson nor was there a lender-borrower relationship between Barton and Jackson. This appeal follows. We agree that Jackson's FDCPA claim is barred by the statute of limitations and that his MMPA claim fails because Barton had no connection with the sale of dental services to Jackson. Because these findings dispose of the case on the merits, we decline to address Barton's further argument that a lender-borrower relationship is required to hold a party liable under the MMPA.

Jackson's first point on appeal is that the trial court erred in dismissing his FDCPA claim against Barton for failure to comply with the statute of limitations. Although this issue was raised in a motion to dismiss, we will treat it here as one for summary judgment because matters

3

outside the pleadings were considered without objection by the trial court. While a trial court usually must give notice to the parties that it is treating a motion to dismiss as a motion for summary judgment, notice is not required when both parties introduce or rely on evidence beyond the pleadings or when a party fails to object to the introduction of such evidence by another party. See Mitchell v. McEvoy, 237 S.W.3d 257, 259 (Mo. App. E.D. 2007). Here, attached to Barton's motion to dismiss were pleadings from the underlying case filed by Barton, on behalf of Lifesmile, against Jackson, including the petition filed on September 9, 2013, and the certificate of service indicating that Jackson was served with the petition on October 7, 2013. Moreover, in arguing this statute of limitations claim, the parties referred to matters from the underlying case, specifically the date upon which the underlying case was filed, both in the trial court and on appeal. There is no record of any objection to consideration of these pleadings nor is there any suggestion that their existence or the dates upon which they were filed are in dispute.[1] Under these circumstances, we use the summary judgment standard of review, which is essentially *de novo.* See Dent Phelps R-III School District v. Hartford Fire Insurance Company, 870 S.W.2d 915, 918 (Mo. App. S.D. 1994) (citing ITT Commercial Finance v. Mid-America Marine Supply Corporation, 854 S.W.2d 371, 376 (Mo. banc 1993)). In reviewing appeals from summary judgments, this Court reviews "the record in the light most favorable to the party against whom judgment was entered" and accords "the non-movant the benefit of reasonable inferences from the record." ITT Commercial Finance, 854 S.W.2d at 376. This Court will

---

[1] While there is also no dispute that the dismissal for lack of prosecution was set aside on August 7, 2014, Barton suggests, and Jackson disputes, that the order to set aside the dismissal indicates that the trial court in that case found that Barton "committed a good faith error and was not '[e]ngaging in harassing, abusive, misleading, deceptive, and unconscionable conduct in an attempt to collect a debt.'" The reason for setting aside the dismissal in the underlying case and the related arguments do not present a genuine issue of material fact and are not related to whether Jackson's FDCPA claim is barred by the applicable statute of limitations.

4

consider the same criteria on appeal for determining the propriety of summary judgment as the trial court uses to rule on the initial motion. Id. Where there is no issue of material fact and the movant is entitled to judgment as a matter of law, we will uphold summary judgment. Id.

With respect to his FDCPA claim, Jackson alleges Barton violated the Act by "engaging in harassing, abusive, misleading, deceptive, and unconscionable conduct in an attempt to collect a debt," "falsely stating the amount of the alleged debt" and "attempting to collect a debt that [Jackson] did not owe in whole or in part." Barton maintains that these claims are barred by the FDCPA's one-year statute of limitations, which provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." See 15 U.S.C. §1692k(d). Finding no Missouri cases on point, we turn to the decisions of federal district and circuit courts to decide this issue.

As a preliminary matter, we must address the initial petition filed against Jackson by Barton, on behalf of Lifesmile, in 2013 and its role in our analysis of this statute of limitations claim. While Jackson maintains that he is only claiming relief for alleged violations that occurred within the one year prior to filing this case, the undisputed facts show otherwise. Even giving Jackson all reasonable inferences, we must conclude that he is claiming that the initial action against him violated the FDCPA. In his amended petition, Jackson uses the heading "The Illicit Lawsuit Against Plaintiff" and alleges that it is unlawful for Barton to seek relief against him because he did not owe the debt sought and did not owe attorney fees or other contractual charges because no contract existed between Jackson and Lifesmile. Jackson further alleges that he has been forced to retain counsel and spend significant amounts of money to defend the "baseless action against him." In describing Barton's alleged "no show" for the trial date in the underlying case, he adds that the defendants "knew that the suit against [Jackson] was baseless

and full of falsities" and "had no evidence with which they could prevail against him." He does not allege any change in the claims against him or damages sought after the suit was initially filed. Accordingly, the only reasonable reading of his amended petition is that Jackson claims the original suit against him violated the FDCPA.

The FDCPA was enacted to regulate the conduct of debt collectors as a means to protect consumers from abusive debt collection practices. See 15 U.S.C. §§1692(e), 1692b-j. Debt collectors who violate the provisions of the FDCPA can face civil liability.[2] See 15 U.S.C. §1692k. Where FDCPA claims are based upon improper pursuit of a debt collection case, for statute of limitations purposes, courts are split on whether the claims accrue upon filing the underlying action or upon service of the petition in the underlying action. See, e.g., Johnson v. Riddle, 305 F.3d 1107, 1113-14 (10th Cir. 2002) (where FDCPA claim based on initiation of debt collection suit, no violation occurs until plaintiff in underlying case is served); Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997) (date complaint filed is easily ascertainable and is date upon which statute of limitations begins to run when bringing FDCPA claim based upon that complaint). We need not address whether Jackson's FDCPA claims accrued at the time of filing or service because under either approach, the statute began running in 2013, and the present action was not filed until January 2015. Therefore, his FDCPA claims against Barton relating to the 2013 lawsuit are untimely under the statute's one-year statute of limitations.

Jackson asserts that he alleged actionable events that occurred within the one year, namely Barton's alleged "no show" for the trial date in the underlying case, a demand letter he sent Jackson after the underlying case was dismissed for lack of prosecution, and his successful

---

[2] We note that the U.S. Supreme Court has held that the FDCPA applies to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995).

motion to set aside the dismissal. Because these actions are not independently actionable, they do not save Jackson's FDCPA claims. "New communications . . . concerning an old claim . . . do not start a new limitations period." Campos v. Brooksbank, 120 F. Supp. 2d 1271, 1274 (D. N.M. 2000). Once a consumer knows of the alleged violation of the FDCPA provided for in a communication, repetition of the same information does not start a new limitations period. See Fraenkel v. Messerli & Kramer, P.A., 2004 WL 1765309, *3-4 (D. Minn. 2004) (service of complaint repeated same information in previous demand letters, thus violation accrued when demand letter sent, not when complaint served); Calka v. Kucher, Krau & Bruh, LLP, 1998 WL 437151, *3 (S.D.N.Y. 1998) (amended complaint and motion for summary judgment did not contain "any new misrepresentation of the amount due" from original complaint, thus plaintiff on notice of misrepresentation and unconscionable practices when underlying action filed and FDCPA violation accrued then).

We find Slorp v. Lerner, Sampson & Rothfuss particularly instructive. 587 Fed. Appx. 249 (6th Cir. 2014). There, the court held:

> As a general matter, when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date. Although the subsequent prosecution of that suit may exacerbate the damages, the continued accrual of damages does not diminish the fact that the initiation of the suit was a discrete, immediately actionable event.

Id. at 258. The Sixth Circuit also recognized situations where a plaintiff may allege several violations of the FDCPA where some of the violations occur within the limitations period and some occur outside the limitations period. Id. at 259. In order to be actionable, the violations that occur within the limitations period must be "discrete violations" and not "the later effects of

7

an earlier time-barred violation."[3]  Id.  In Slorp, the plaintiff alleged that the defendants engaged in "unfair, deceptive and fraudulent debt-collection practices when they filed an illegitimate foreclosure action against plaintiff."  Id. at 251.  The Sixth Circuit held that the "defendants did not commit a fresh violation of the FDCPA each time they filed pleadings or memoranda reaffirming the legitimacy of their state-court suit; rather, those were the continuing effects of their initial violation."  Id. at 259.  The plaintiff "was not deceived or abused anew each time the defendants reaffirmed their deceptive statements throughout the litigation."  Id.

Here, Jackson alleges that Lifesmile is directing Barton to collect Jackson's alleged debt and that he was forced to retain an attorney and spend significant sums to defend the baseless action filed by Barton.  While Barton's alleged "no show" on the trial date and his subsequent demand letter and successful motion to set aside the dismissal may have exacerbated the damages in a timely lawsuit filed by Jackson, the initiation of the suit in 2013 by Barton, on behalf of Lifesmile, was a "discrete, immediately actionable event."  See id. at 258.  These alleged actions are not "discrete violations" of the FDCPA but merely the "later effects of an earlier time-barred violation," namely the original suit brought by Barton, on behalf of Lifesmile, against Jackson in 2013.  See id.  Barton did not commit a fresh violation of the FDCPA in each event or communication in which he attempted to reaffirm the legitimacy of his suit against Jackson.  Moreover, Jackson was not "deceived or abused" at each step because Barton was taking action that reaffirmed his alleged unlawful pursuit of debt that was not owed, including "contractual" charges and other fees to which Jackson alleged he never agreed to be liable.  See id.

---

[3] Black's Law Dictionary, 534 (9th ed. 2009), defines "discrete" as "Individual; separate; distinct."

8

Specifically, Jackson claims that Barton's alleged "no show" and the demand letter sent thereafter cannot be considered a continuing prosecution of Barton's action, on behalf of Lifesmile against Jackson because Barton was not pursuing his action at the time he failed to appear and the action was dismissed at the time the demand letter was sent. We disagree. The alleged "no show," regardless of whether it was intentional, took place within the course of the litigation, and Jackson was not "deceived or abused anew" by the subsequent demand letter since Barton, on behalf of Lifesmile, was merely reaffirming the same allegedly unlawful claims to Jackson's outstanding debt. See id. As for the order setting aside the dismissal for lack of prosecution, we consider this a "later effect" of the petition filed in 2013 because there is no allegation that the claims against Jackson changed once the original case was reinstated and the possibility of reinstatement existed as of the moment it was dismissed because it was dismissed *without prejudice*.

Jackson relies on a case form the Northern District of Illinois to support his position that his FDCPA claim is not time-barred and that a new statute of limitations period started when Barton successfully reinstated the underlying case, but we find this case distinguishable. See Glazewski v. The CKB Firm, P.C., 2014 WL 661278 (N.D. Ill. 2015). In Glazewski, the plaintiff filed suit against the defendant law firm under the FDCPA alleging that the firm, on behalf of a bank, filed a legal action against the plaintiff in an improper judicial district. Id. at *1. The underlying case was filed in February 2012. Id. When the parties to the underlying case agreed to an installment payment plan, the case was dismissed pursuant to settlement. Id. The court retained jurisdiction to enforce the settlement in the event the plaintiff defaulted on the payment plan. Id. In May 2014, the plaintiff defaulted, and the defendant law firm, on behalf of

9

the bank, successfully moved to reinstate the case, and judgment was entered against the plaintiff. Id.

The law firm moved to dismiss the plaintiff's FDCPA claim based on statute of limitations grounds. Id. The court considered the venue statute of the FDCPA and held that the law firm's reinstatement of the underlying case was "close enough to the filing of a suit to constitute 'bring[ing] legal action'' against [plaintiff] within the meaning of the FDCPA's venue provisions. Id. (quoting the FDCPA's venue provision, 15 U.S.C. §1692i(a)). Because the plaintiff sued the defendant law firm within one year of that event, the court found the plaintiff's FDCPA claims were not time-barred. Id.

Not only are we not bound by Glazewski, but we find its analysis distinguishable given that the court specifically viewed the facts through the lens of the venue provision of the FDCPA, which is not at issue here. See id. at *1 (analyzing 15 U.S.C. §1692i(a)). Moreover, the court did not consider the analysis of FDCPA statute of limitations claims in other circuit and district court cases that predated its decision and remain good law. See, e.g., Slorp, 587 Fed. Appx. 249; Campos, 120 F. Supp. 2d 1271; Fraenkel, 2004 WL 1765309; Calka, 1998 WL 437151. We find them more persuasive authority.

We have also considered Jackson's policy argument that if we accept Barton's position, debt collectors could file their actions against consumers and purposefully wait 366 days to further collect on the debt to avoid liability under the FDCPA. While Jackson argues that such a scenario could potentially deny a consumer the protection the statute was intended to provide, to hold otherwise would artificially extend the clearly stated one-year statute of limitations period contained in the statute and expose parties engaged in debt collection litigation to potential FDCPA claims at every step of their continued efforts, even when subsequent alleged violations

10

are nothing more than "continuing effects of their initial violation." See Slorp, 587 Fed. Appx. at 259. Where the initiation of a debt collection suit against a consumer is itself a violation of the FDCPA, it is appropriate for the consumer's claim to accrue at the time of that "discrete, immediately actionable event." See id. at 258. Should consumers not immediately recognize that debt collection suits filed against them are unlawful pursuant to the FDCPA, they can seek the remedies available under appropriate tolling doctrines.[4] Finally, while it is not the case here, should a debt collector's actions subsequent to filing suit against a consumer be deemed "discrete violations" and not "the later effects" of an earlier violation, they may be independently actionable under the law. See id. at 259.

Point I is denied.

Jackson's second point on appeal is that the trial court erred in dismissing his MMPA claim against Barton.[5] Our review of a trial court's grant of a motion to dismiss is *de novo*, and "we view the facts in the light most favorable to plaintiff, treating the facts as alleged as true, to determine whether the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief." Benton v. Cracker Barrel Old Country Stores, Inc., 436 S.W3d 632, 633 (Mo. App. E.D. 2014). Jackson alleges Barton's actions, as previously described, violated the MMPA

---

[4] Slorp, 587 Fed. Appx. at 258-59, suggests the availability of tolling doctrines in situations such as these, and we note that both fraudulent concealment and equitable estoppel are remedies available under Missouri law. See Mo. Rev. Stat. §516.280 ("If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."); Sugent v. Arnold's Estate, 101 S.W.2d 715, 718 (1937) (Equitable estoppel prevents "a defendant . . . from setting up the statute where, his conduct, though not fraudulent, has nevertheless induced the plaintiff to delay bringing suit until after the expiration of the statutory period.").

[5] Barton also argues that this appeal should be dismissed for Jackson's failure to include a jurisdictional statement in his brief. While Rule 84.04(b) requires the inclusion of a jurisdictional statement in appellant's brief, we exercise our discretion and review Jackson's claims since the deficiency does not impede disposition on the merits. See J.A.D. v. F.J.D., 978 S.W.2d 336, 338 (Mo. banc 1998).

by employing "deceptive and unfair practices in connection with the collection of [Jackson's] alleged debt to Lifesmile." Jackson further alleges Barton's "misrepresentation and/or concealment occurred in connection with the sale of dental services and equipment to [Jackson]." Barton claims that this conduct is not actionable under the MMPA.

The MMPA is a Missouri statute intended to expand common law fraud in order "to preserve fundamental honesty, fair play and right dealings in public transactions." Watson v. Wells Fargo Home Mortgage, Inc., 438 S.W.3d 404, 407 (Mo. banc 2014) (quoting State ex rel. Danforth v. Independence Dodge, Inc., 494 S.W.2d 362, 368 (Mo. App. 1973)). It declares unlawful the "act, use or employment by any person" of unfair or deceptive practices performed "*in connection with* the sale or advertisement of any merchandise." Section 407.020.1 (emphasis added). A violation of the MMPA can occur "before, during or after the sale" as long as it is made "*in connection with* the sale." Id. (emphasis added); see also Watson, 438 S.W.3d at 407. We find that Barton's alleged actions were not "in connection with" Lifesmile's sale of dental services to Jackson and are not, therefore, actionable under the MMPA.

Because the MMPA does not describe when an unfair or deceptive practice is performed "in connection with" a sale, the Missouri Supreme Court in Conway v. CitiMortgage,Inc. considered the dictionary definition of "to connect," which is "to have a relationship." Id. at 414 (citing Webster's Third New International Dictionary, 48 (1993)). In Conway, the plaintiffs filed an MMPA action against the defendants alleging unfair practices with respect to an alleged wrongful foreclosure on a deed of trust. Id. at 412-13. The Court looked specifically at the "long-term relationship" created by a loan, "in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time." Id. at 415. The Court noted, "[b]ecause each party must continue to perform these duties

12

for the life of the loan, the sale continues throughout the time the parties perform their duties." Id. "Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer, are done 'in connection with' the original procurement of a loan." Id. at 416. The Court held that "there is no compelling reason to interpret 'in connection with' to apply only to when the entity engaged in the misconduct was a party to the transaction at the time the transaction was initiated." Id. at 415.

On the same day the Missouri Supreme Court decided Conway, it decided Watson v. Wells Fargo Home Mortgage, which also involved MMPA claims made against a loan servicer. In Watson, the plaintiff sued the defendant under the MMPA for wrongfully foreclosing on a deed of trust and engaging in bad faith negotiations with respect to loan modifications. Watson, 438 S.W.3d at 406. The Court distinguished Watson from Conway and found that the loan servicer in Watson could not be found liable under the MMPA because the loan modification negotiations at issue were "not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan" and, therefore, they were not "in connection with" the sale of the loan as the statute requires. Id. at 408. The loan servicer "was not enforcing the terms of the loan but rather contemplating a new agreement" and, therefore, was not acting "in connection with" the original loan so as to be liable under the MMPA. Id.

Like the Missouri Supreme Court in Conway, we acknowledge the "potentially broad scope of what is prohibited under the MMPA," but like the Court in Watson, we also acknowledge that there are limits to its application. Conway, 438 S.W.3d at 416; See Watson, 438 S.W.3d at 408. Because the Missouri Supreme Court declined to extend MMPA liability in Watson, we conclude it did not intend to swing wide the door on MMPA claims by allowing actions against any defendant as long as the plaintiff can allege some type of relationship

13

between the alleged unlawful act and the underlying sale. Further, if the Missouri Supreme Court intended the MMPA to apply to all allegedly unlawful activity by third-party debt collectors, the opinions could have been written that way. Instead, both the Conway and Watson decisions are cloaked in terms of loans and loan servicing, and the Conway decision is predicated on the long-term relationships that loans create and the continuing duties of borrowers and lenders to make and collect payments. Conway, 438 S.W.3d at 415; Watson, 438 S.W.3d at 407-408.

Prior to the Missouri Supreme Court decision in Conway and Watson, this Court decided State ex rel. Koster v. Portfolio Recovery Associates, LLC and State ex rel. Koster v. Professional Debt Management, LLC, in which we held, "We do not read the plain language of the [MMPA] to provide that debt collection by a third party . . . is 'in connection with' the sale of merchandise, and is included among the activities prohibited by the MPA." State ex rel. Koster v. Portfolio Recovery Associates, LLC, 351 S.W.3d 661, 668 (Mo. App. E.D. 2011); State ex rel. Koster v. Professional Debt Management, LLC, 351 S.W.3d 668, 675 (Mo. App. E.D. 2011). While these decisions directly support Barton's position on this issue, the rationale used by this Court in reaching its holdings in those cases was rejected by the Missouri Supreme Court in Conway. See id. at 415-16. In addressing Professional Debt and Portfolio Recovery Associates, the Missouri Supreme Court in Conway specifically stated,

> Given that the MMPA was enacted to supplement the common law definition of fraud, there is no compelling reason to interpret 'in connection with' to apply only when the entity engaged in the misconduct was a party to the transaction at the time the transaction was initiated as Professional Debt and Portfolio Recovery Associates require. Even if the loan servicer was not an original party when the lender and borrower agreed to the services and responsibilities each would perform, enforcing the terms of the loan is in connection with the ongoing sale of the loan . . . . Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer are done ' in connection with' the original procurement of the loan. To the extent Professional

14

Debt and Portfolio Recovery Associations conflict with this holding, they should no longer be followed.

Conway, 438 S.W.3d at 415-16. The Court suggested that our earlier decisions required that the entity engaged in the alleged misconduct be a party to the original transaction at the time it was initiated. Id. While the Conway decision rejected such a requirement, it does not necessarily follow, nor did the Conway Court hold, that third-party debt collectors are, therefore, subject to the MMPA. We acknowledge that the MMPA can cover alleged wrongdoing "before, during or after a sale" and that the alleged misconduct does not have to be performed by a party to the transaction at the time it was initiated, but for the reasons stated in this opinion, we hold that the MMPA does not apply to Barton in this case.

While not binding on this Court, we find persuasive the Eighth Circuit's opinion in Wivell v. Wells Fargo, 773 F.3d 887 (8th Cir. 2014). In Wivell, when the plaintiffs' property was foreclosed, they sued both Wells Fargo, their lender, and Kozeny, their trustee under the deed of trust securing the promissory note they signed, under various theories, including the MMPA. Id. at 891-92. While the Eighth Circuit found the plaintiffs' MMPA claim against Wells Fargo actionable pursuant to Conway and Watson, the court distinguished Kozeny, who had a trustee-borrower relationship with the plaintiffs, from the defendants in Conway and Watson, who had lender-borrower relationships with their respective plaintiffs. Id. at 895, 899-900. The court noted that the Conway court's "rationale turned on the continuing nature of the lender-borrower relationship" and that Kozeny "did not assume a continuing duty to service the [plaintiffs'] loan." Id. at 895. Instead, the deed of trust "established a narrow, contingent role for Kozeny in the event that the Wivells defaulted." Id. The Eighth Circuit concluded that because Kozeny did not "'continue to perform these duties' for the life of the loan," the holdings

15

of <u>Conway</u> and <u>Watson</u> did not apply to Kozeny, and they could not be liable to the plaintiffs under the MMPA. <u>Id.</u>

Here, Jackson does not allege Barton personally owns the right to collect on the debt owed by Jackson, nor that the debt was assigned to him. <u>Cf. Chamineak v. Jefferson Capital Systems, LLC</u>, 2015 WL 4207084, *6-7 (E.D. Mo. 2015) (creditor's assignee who stepped into shoes of original creditor "owned the right to collect on the loan" and therefore, collection actions were "in connection with" the loan). Jackson does not allege Lifesmile's property interest or rights to the alleged debt were transferred to Barton. There are no facts alleged that suggest Barton stepped into Lifesmile's shoes such that he has an ongoing duty to plaintiff analogous to the duty to service the loan at issue in <u>Conway</u>, nor was there a long-term relationship established between Barton and Jackson. <u>See Conway</u>, 438 S.W.3d at 415; <u>see also Bland v. LVNV Funding, LLC</u>, 2015 WL 5227414, *8 (finding relationship created by parties to a mortgage are "complex, long-term, and imposes greater duties on the parties to the loan"). Instead, like the defendant Kozeny in <u>Wivell</u>, Barton's role was narrow and contingent and only took effect once Jackson failed to pay the debt owed Lifesmile. <u>See Wivell</u>, 773 F.3d at 895. Accordingly, the allegations regarding Barton's debt collection activities in this case are not "in connection with" the underlying sale of dental services to Jackson by Lifesmile, and therefore, Jackson fails to state a claim against Barton under the MMPA.

Point II is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

16