

# SUPREME COURT OF MISSOURI
# en banc

SHELBY E. WATSON, )
 )
    Appellant, )
 )
v. ) No. SC93769
 )
WELLS FARGO HOME )
MORTGAGE, INC., ET AL., )
 )
    Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Bryan L. Hettenbach, Judge

### *Opinion issued August 19, 2014*

Shelby Watson appealed from the trial court's judgment in favor of Wells Fargo on her Missouri Merchandising Practices Act (MMPA), section 407.020[1] claim, in which she maintained Wells Fargo engaged in bad faith negotiations of a loan modification and wrongfully foreclosed on a deed of trust. The trial court held that since Wells Fargo's actions were not done before or at the time of the extension of credit in the original loan, and Wells Fargo was not an original party to that transaction, its actions were not "in connection with" the sale of the original loan.

---

[1] All references are to RSMo Supp. 2013 unless otherwise noted.

This case, like *Conway v. CitiMortgage Inc.*, --- S.W.3d --- (Mo. banc 2014) (No. SC93951), decided today, raises the issue of when the actions of a loan servicer who was not a party to the initial transaction are "in connection with" the initial sale of the loan. In *Conway*, it was determined that a plaintiff may state a claim under the MMPA against a loan servicer who was not a party to the initial transaction for the alleged wrongful foreclosure on a deed of trust.

Here, Watson alleged that Wells Fargo violated the MMPA in two ways: (1) wrongfully foreclosing on the deed of trust; and (2) engaging in bad faith negotiations of a loan modification, even though there was no obligation to renegotiate under the terms of the original loan. To the extent Watson's allegations relate to the wrongful foreclosure, summary judgment is not appropriate pursuant to *Conway*. However, because Wells Fargo was not enforcing the terms of the original loan when it negotiated the loan modification, its actions did not violate the MMPA as they were not "in connection with" the sale of the original loan. The trial court's judgment is affirmed in part and reversed in part, and the case is remanded.

## Factual Background

To finance the purchase of a new home in 2006, Shelby Watson obtained a loan from Mortgage Resources in the Midwest that was secured by a deed of trust on the property. The deed of trust stated that Mortgage Resources was not under any obligation to renegotiate the terms of the loan. Wells Fargo began servicing the loan soon thereafter.

When Watson became unable to make the monthly payments, she requested a loan

modification from Wells Fargo.  According to Watson, her request was approved, but she did not learn of the approval until after the deadline to accept the new terms.  Wells Fargo then invited her to apply for a second modification.  Watson contends that she accepted the second modification and that Wells Fargo ratified the modification.  According to Wells Fargo, the two parties engaged in discussions related to the loan modification but never reached an agreement.  Wells Fargo foreclosed on the property and sold it to Fannie Mae.

Watson then filed a single-count petition alleging that Wells Fargo violated the MMPA.  Wells Fargo filed a motion for summary judgment, arguing that Watson could not produce evidence that Wells Fargo's actions were done "in connection with" the sale of the loan. Wells Fargo argued that its actions did not relate to any claims or representations made before or at the time Watson first obtained the loan and that it was not a party to the transaction when Watson first obtained the loan.  The trial court entered judgment for Wells Fargo, and Watson appeals.  This Court granted transfer pursuant to Mo. Const. art. V, sec. 10.

**Standard of Review**

An appellate court's review of a motion for summary judgment is essentially *de novo*.  *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04.  Summary judgment is appropriate when a moving party shows there are no genuine issues of material facts and the party is entitled to judgment as a matter of law.  *ITT Commercial Fin.*, 854 S.W.2d at 376.  Since the review is *de novo*, a trial court's order may be affirmed on a different basis than that used at trial.

*Id.* at 387-88.

## Analysis

Watson alleges that Wells Fargo violated the MMPA by: (1) negotiating the loan modification in bad faith; (2) using an unequal bargaining power to obtain Watson's signature on the modification agreement; (3) falsely stating she had rescinded the modification agreement after accepting it to justify proceeding with the foreclosure sale; (4) foreclosing on the property despite promising to postpone foreclosure proceedings during the modification discussions; and (5) failing to provide notice of the foreclosure sale in violation of section 443.325, RSMo 2000. These allegations can be divided into two categories: those relating to the loan modification negotiations and those relating to the alleged wrongful foreclosure. Allegations (1) through (3) fall into the loan modification category, while allegations (4) and (5) relate to the alleged wrongful foreclosure. At issue in this case is whether these actions were done "in connection with" the original loan transaction.[2]

The MMPA, as first adopted by the legislature in 1967, protects consumers by expanding the common law definition of fraud "to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo. App. 1973); *see Huch v. Charter Commc'ns,*

---

[2] Watson also argues that the loan modification negotiations constitute a separate sale under the MMPA and that Wells Fargo actions were "in connection with" the loan modification negotiations. However, Watson did not raise this argument below. Because litigants may not raise an argument for the first time on appeal, this point will not be considered. *See State v. Carter*, 415 S.W.3d 685, 689 (Mo. banc 2013). After remand, Watson may seek leave to file an amended petition that includes these claims. This Court offers no opinion as to whether these claims are actionable under the MMPA.

*Inc.*, 290 S.W.3d 721, 725-26 (Mo. banc 2009). For this purpose, section 407.020.1 makes the "act, use or employment by any person" of any unfair or deceptive practice done "*in connection with* the sale or advertisement of any merchandise" unlawful (emphasis added). The use of an unlawful practice is a violation of the MMPA "whether committed before, during or after the sale," so long as it was made "in connection with" the sale. *See* section 407.020.1. Section 407.025.1, RSMo 2000, permits private individuals to bring an action under the MMPA,[3] and courts may award a prevailing party punitive damages and attorney fees.

While the MMPA states that a violation can happen at any time before, during or after a sale, it does not set out when an unlawful act is committed "in connection with" the sale. In *Conway v. CitiMortgage*, decided today, this Court examined "in connection with" in the loan collection context. In *Conway*, the plaintiffs alleged that the defendants wrongfully foreclosed on the deed of trust that the plaintiffs executed when they purchased their property. --- S.W.3d at --- (Mo. banc 2014) (No. SC93951). *Conway* held that when the operative transaction is the procurement of a loan, the "sale" is not complete when the lender extends the credit, but continues throughout the time the borrower is making payments on the loan. *Id.* at --- (slip op. at 7). The enforcement of the loan's terms is "in connection with" the sale of the loan because the sale continues for the life of the loan. *Id.* at --- (slip op. at 7). In the context of an alleged wrongful foreclosure, the plaintiff was able to state a claim under the MMPA against the

---

[3] Section 407.100, RSMo 2000, allows the attorney general to pursue a cause of action under the MMPA as well.

foreclosing entity, regardless of whether that entity was a party when the loan was first procured, because "a party's rights to collect a loan is part of that sale and, therefore, 'in connection with' the loan." *Id.* at --- (slip op. at 7). Following this analysis, summary judgment is not appropriate with respect to Watson's wrongful foreclosure allegations.

The loan modification negotiations, however, were not "in connection with" the sale of this loan because that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan. For the purposes of the MMPA, a loan is a bundle of services. Even though the sale of the loan continues until those services are completed, the extent of those services – the rights and obligations of the parties with respect to the loan – is fixed at the outset when the parties agree to the terms of the loan. The deed of trust executed in the original transaction specifically stated that there was no obligation to engage in renegotiations. In engaging in loan modification negotiations, Wells Fargo was not enforcing the terms of the loan but rather contemplating creating a new agreement. Its actions were not "in connection with" the sale of the original loan.

Watson further argues that an obligation to act in good faith arises at the time of the transaction. Watson contends that since a seller's breach of this duty will often not occur until long after the terms of a sale are finalized, the loan modification negotiations were "in connection with" the original transaction. For support, she relies on *Ward v. West County Motor Co., Inc.*, 403 S.W.3d 82 (Mo. banc 2013). In *Ward*, the defendant filed a motion to dismiss the plaintiffs' MMPA claims, which alleged in relevant part that the defendant acted in bad faith in telling the plaintiffs that deposits they paid were refundable when they were, in fact, nonrefundable. *Id.* at 83-84. Relying on 15 CSR §

6

60-8.040, which states a failure to act in good faith is an unfair practice under the MMPA, this Court determined that an allegation of a lack of good faith was a ground for relief under the MMPA. *Id.* at 86.

Watson's reliance on *Ward* is misplaced. While a lack of good faith may give rise to a MMPA claim, *Ward* is inapposite in this case because Watson does not argue that Wells Fargo was enforcing the terms of the initial loan in bad faith. Rather, she argues that Wells Fargo engaged in loan modification negotiations in bad faith. As noted above, the loan modification negotiations were not related to the enforcement of the original loan terms, so a lack of good faith in the negotiations cannot be "in connection with" the sale of the original loan.

### Conclusion

For the foregoing reasons, the trial court's judgment is affirmed in part and reversed in part, and the case is remanded.[4]

_____
Mary R. Russell, Chief Justice

Breckenridge, Fischer, and
Wilson, JJ., concur; Draper, J.,
concurs in part and dissents in
part in separate opinion filed;
Stith and Teitelman, JJ.,
concur in opinion of Draper, J.

_____

[4] Prior to the submission of this case on appeal, Watson filed a motion for her attorney fees on appeal pursuant to section 407.025.1, RSMo 2000. On remand, the trial court should determine the appropriate amount of attorney fees for counsel's appellate work. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 435 (Mo. banc 2013).



# SUPREME COURT OF MISSOURI
## en banc

SHELBY E. WATSON,            )
                                             )

       Appellant,          )
                                             )

v.                             )       No. SC93769
                                           )

WELLS FARGO HOME        )
MORTGAGE, INC., ET AL.,     )
                                           )

       Respondents.      )

**OPINION CONCURRING IN PART AND DISSENTING IN PART**

I concur with the principal opinion's holding that summary judgment was not appropriate with respect to Watson's wrongful foreclosure allegations. I respectfully dissent however, from the principal opinion's holding concerning Watson's loan modification allegations. Under these facts, and given Wells Fargo's position as the original loan servicer for the initial mortgage loan, clearly the loan modification was "in connection with" the original loan. The principal opinion holds that because Wells Fargo was not enforcing the original loan terms when it negotiated Watson's loan modification, its actions were not "in connection with" the sale of the original mortgage loan. I believe the principal opinion has construed the phrase "in connection with the sale" incongruously to this Court's holding in *Conway v. CitiMortgage Inc.*, -- S.W.3d -- (No.

SC93951) (Mo. banc 2014), decided today, and this holding amounts to a distinction without a difference. Such a narrow reading permits an original loan servicer, Wells Fargo, to escape liability for its bad faith negotiations that had a relationship to the refinancing of the original loan and the execution of the foreclosure that cost Watson her home.

The purpose of the MMPA is the protection of consumers. *Huch v. Charter Commc'ns., Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009).The MMPA was enacted to "supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions." *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013). "The statute … paint[s] in broad strokes to prevent evasion thereof due to overly meticulous definitions." *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. App. S.D. 2006).

Section 407.020.1, RSMo 2000, provides that "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact *in connection with the sale…* of any merchandise … is declared to be an unlawful practice." (Emphasis added). Moreover, "[a]ny act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or *after the sale*, advertisement or solicitation." *Id*. (Emphasis added).

In *Conway*, the principal opinion finds that the phrase "in connection with" the sale means there must be a relationship between the sale of merchandise and the alleged unlawful action. *Conway*, -- S.W.3d -- (slip op. at 6). Specifically, the plaintiffs had to

2

allege a relationship between the foreclosure actions and the original loan to prevail under the MMPA. *Id*. at --- (slip op. at 6-7).This Court held that, "[f]or the purposes of the MMPA, a loan is an agreed upon bundle of services being 'sold' by the lender to the borrower, and *the 'sale' of the loan lasts until the last service is performed or the loan is repaid.*" *Id*. at --- (slip op. at 2) (Emphasis added). "As long as the plaintiff alleges that the misconduct occurred in connection with the services that comprise the 'sale' of a loan, the actor can be liable under the MMPA." *Id*.

The principal opinion found *Conway* did not apply in Watson's case because the bad faith negotiations Wells Fargo engaged in were not pursuant to the terms of the loan because the deed of trust specifically stated there was no obligation to engage in renegotiations of the financing terms. The principal opinion found Wells Fargo was not enforcing the original terms of the loan, but rather was contemplating a new agreement. Therefore, the principal opinion reasons Wells Fargo's actions were not "in connection with" the original sale of the mortgage loan.

While the terms of the original mortgage loan did not contain an obligation to renegotiate the financing terms, Wells Fargo chose to do so as part of its "bundle of services," going so far as to execute a binding loan modification. Even if one were to accept the premise that the parties were contemplating a new agreement, Wells Fargo still had an obligation under the MMPA to avoid engaging in deception, fraud, false pretense, false promise, or misrepresentation with respect to those negotiations. There is no way to work around the fact that the new agreement would have been "in connection with" the original loan as was the case in *Conway*. *Conway* further explained that the "sale"

3

continues throughout the time the borrower is making payments on the loan and lasts until the last service is performed or the loan is repaid. Here, Watson still was receiving the "bundle of services" that were "in connection with" the original loan because she had not successfully refinanced the terms of her loan during the negotiations. Moreover, Wells Fargo had not performed "the last service," nor had Watson repaid the loan during the loan modification negotiations. Therefore, I believe the "sale" continued throughout the loan modification process, and, as such, Watson demonstrated the loan modification process was "in connection with the sale" for purposes of demonstrating a violation of the MMPA.

Accordingly, I believe the circuit court erred in entering summary judgment in Wells Fargo's favor on Watson's loan modification allegations. I would reverse the circuit court's judgment and remand the case for further proceedings on all of the allegations raised in Watson's petition.

_____
GEORGE W. DRAPER III, JUDGE

4