Paul C. Wilson, Judge, dissenting.
In holding the legal services Mr. Barton provided to LifeSmile were "in connection with" the sale of LifeSmile's dental services to Mr. Jackson for purposes of his MMPA claim, the principal opinion misapplies Conway v. CitiMortgage, Inc. , 438 S.W.3d 410 (Mo. banc 2014), and unjustifiably expands the purview of the MMPA. Accordingly, I respectfully dissent and would affirm the circuit court's judgment dismissing Mr. Jackson's MMPA claim against Mr. Barton.
In June 2011, Mr. Jackson first sought dental services from LifeSmile. LifeSmile informed Mr. Jackson that, after applying his insurance benefits, he was responsible for $178 of the total cost of the dental services. He did not pay at that time. In *273 April 2012, Mr. Jackson returned to LifeSmile for additional dental services. Again, after insurance, LifeSmile informed Mr. Jackson he owed $177.80 for these additional services. Mr. Jackson alleges LifeSmile agreed to allow him to pay the total amount owed ($355.80) over time. There was no written agreement regarding the dental services rendered or the manner in which Mr. Jackson would pay LifeSmile for those services. By April 25, 2012, Mr. Jackson had paid LifeSmile the full amount owed.
On June 15, 2012, however, LifeSmile began sending Mr. Jackson collection letters stating he owed LifeSmile further payment (which Mr. Jackson disputed) and a monthly late fee (which Mr. Jackson alleged he never agreed to). On September 9, 2013, LifeSmile filed a debt collection action against Mr. Jackson for sums LifeSmile claimed he still owed. See LifeSmile Dental Care N. v. Jackson , Case No. 13SL-AC29643. Mr. Barton represented LifeSmile in this action.
LifeSmile's case was set for trial July 10, 2014. Mr. Jackson appeared for trial with his attorney, but no one appeared on behalf of LifeSmile. As a result, the trial court dismissed LifeSmile's action for failure to prosecute. On July 16, LifeSmile filed a motion to vacate the trial court's judgment. The trial court sustained LifeSmile's motion and reinstated LifeSmile's collection action. Before the matter could be reset for trial, however, LifeSmile voluntarily dismissed the case.
Thereafter, Mr. Jackson filed the present lawsuit against Mr. Barton (though, notably, not against LifeSmile). In an effort to state a claim against Mr. Barton under the MMPA, Mr. Jackson alleged Mr. Barton's dishonest, fraudulent, or deceptive collection efforts were "in connection with" the sale of dental services provided to him by LifeSmile in 2011 and 2012.
The MMPA was enacted to "protect[ ] consumers by expanding the common law definition of fraud 'to preserve fundamental honesty, fair play and right dealings in public transactions.' " Conway , 438 S.W.3d at 414. The "use of an unlawful practice is a violation of the MMPA 'whether committed before, during or after the sale [of merchandise],' so long as it was made 'in connection with ' the sale." Id. (quoting § 407.020.1, RSMo Supp. 2013 (emphasis added)). The central issue with respect to Mr. Jackson's MMPA claim, therefore, is whether Mr. Barton's representation of LifeSmile in its collection action against Mr. Jackson was "in connection with" LifeSmile's sale of dental services to Mr. Jackson.
In Conway , this Court held CitiMortgage's allegedly fraudulent conduct during a loan foreclosure could give rise to a claim under the MMPA by the borrower. Id. at 416. In reaching this conclusion, the Court held CitiMortgage's loan collection actions were "in connection with" the underlying loan transaction for purposes of the MMPA. Id. This holding, however, was based upon on the unique characteristics of the loan and the resulting long-term, borrower-lender relationship:
A loan is composed of both the initial extension of credit and the bundle of related services. It creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time. Because each party must continue to perform these duties for the life of the loan, the sale continues throughout the time the parties perform their duties. A party's right to collect a loan is *274 part of that sale and is, therefore, "in connection with" the loan.
Id. at 415.
Conway rejects the argument that a defendant cannot be liable under the MMPA unless the defendant was a party to the original sales transaction. Id. at 416 ("the MMPA may cover parties who enter the relationship after a buyer enters the transaction, including a loan servicer") (emphasis omitted). But, again, this conclusion was based upon whether the conduct being challenged in the MMPA action was fairly within the bundle of services to which the borrower and lender originally agreed. "Even if the loan servicer was not an original party when the lender and borrower agreed to the services and responsibilities each would perform , enforcing the terms of the loan is in connection with the ongoing sale of the loan.... Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer, are done 'in connection with' the original procurement of the loan." Id. at 415-16 (emphasis added).
The Court emphasized this point when, on the same day Conway was decided, the Court rejected an MMPA claim in which the challenged conduct was not part of the services to which the borrower originally agreed.
The loan modification negotiations, however, were not "in connection with" the sale of this loan because that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan. For the purposes of the MMPA, a loan is a bundle of services. Even though the sale of the loan continues until those services are completed, the extent of those services-the rights and obligations of the parties with respect to the loan-is fixed at the outset when the parties agree to the terms of the loan .
Watson v. Wells Fargo Home Mort., Inc. , 438 S.W.3d 404, 408 (Mo. banc 2014) (emphasis added).
In the present case, there was no ongoing relationship between Mr. Jackson and LifeSmile, let alone the sort of long-term, borrower-lender relationship present in Conway . There was, at most, an oral agreement that Mr. Jackson would have an unspecified time to pay for services already rendered. Because Mr. Jackson does not allege he and LifeSmile agreed to any particular "bundle of services" to be performed throughout the "life" of his "loan," he does not-and cannot-allege the actions LifeSmile took were part of that original agreement.
More importantly, Mr. Jackson did not sue LifeSmile under the MMPA.[1] Instead, he sued LifeSmile's attorney, Mr. Barton, and LifeSmile's owners and operators (Ms. Sally Herbert, Mr. Brent Setien, and Mr. Blake Setien) in their individual capacities. Even if Mr. Jackson and LifeSmile had agreed to a long-term, lender-borrower relationship (which they did not), Mr. Jackson does not allege this relationship envisioned a loan "servicer" of the sort described in Conway and Watson or that Mr. Barton was playing such a role. When the parties agree at the outset to a bundle of services, Conway holds a loan "servicer" can be sued under the MMPA for the manner in which those services are rendered even if the servicer was not a party to the original agreement. Watson , on the other hand, holds the *275 MMPA only covers the bundle of services originally agreed to and cannot be used to police actions falling outside that original agreement. Because Mr. Jackson does not allege Mr. Barton's actions were fairly within the bundle of services to which he and LifeSmile originally agreed, Watson controls and the circuit court was correct in dismissing Mr. Jackson's MMPA claim.[2]

At most, Mr. Jackson might have been able to sue LifeSmile and/or its owners under the MMPA based on the actions Mr. Barton took in LifeSmile's name. The Court need not reach the issue of whether such a claim would state a valid cause of action, however, because that issue is not presented in this appeal.

The Court holds Mr. Jackson's FDCPA claim against Mr. Barton was timely, and I agree. The FDCPA, however, expressly applies to attorneys engaged in debt collection practices, Heintz v. Jenkins, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) ("the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"), and is not limited to actions taken "in connection with" the original transaction as under the MMPA.