

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| PLANNED PARENTHOOD GREAT PLAINS, | ) ) ) |
| Appellant, | ) ) ) WD87008 |
| v. | ) ) OPINION FILED: ) April 15, 2025 |
| STATE OF MISSOURI ex rel. ATTORNEY GENERAL ANDREW BAILEY, | ) ) ) ) ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Joel P. Fahnestock, Judge**

**Before Division Two:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Planned Parenthood Great Plains ("Planned Parenthood") appeals from the

judgment of the Circuit Court of Jackson County, Missouri ("circuit court"), granting

judgment on the pleadings against Planned Parenthood and in favor of the Attorney

General of the State of Missouri ("Attorney General") and thereby enforcing the Attorney

General's Civil Investigative Demand seeking information from Planned Parenthood. We

affirm.

**Factual and Procedural History**[1]

The underlying lawsuit arises from the Attorney General's March 10, 2023 issuance of a Civil Investigative Demand ("CID") to Planned Parenthood seeking information related to the Attorney General's investigation of Washington University Pediatric Transgender Center at St. Louis Children's Hospital "or others" on the ground that the Attorney General "has reason to believe that Subject *or others* in the state may have used deception, fraud, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of material facts within the scope of the Missouri Merchandising Practices Act."

Supplementing this description of the investigation, the CID incorporated by reference an eighty-six-paragraph affidavit by a whistleblower[2] detailing allegations involving transgender care provided by Washington University Pediatric Transgender Center. The CID advised Planned Parenthood that the Attorney General believed that Planned Parenthood had "information, documentary material, and/or physical evidence relevant to the investigation," and specifically identified fifty-four document requests seeking that information.[3] The CID further advised Planned Parenthood that it should

---

[1] "In moving for judgment on the pleadings, the movant concedes, for purposes of the motion, that all well-pleaded facts contained in the non-moving party's petition are true." *French v. Mo. Dep't of Corr.*, 601 S.W.3d 299, 301 (Mo. App. W.D. 2020) (citing *Garr v. Mo. Bd. of Prob. & Parole*, 211 S.W.3d 191, 192 (Mo. App. W.D. 2007)).

[2] Pursuant to the directive of section 509.520 (Supp. IV 2024), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through March 10, 2017, unless otherwise indicated.

[3] The requests largely focused on the policies of Planned Parenthood regarding the care and treatment of "Clients" who sought puberty blockers, cross-sex hormones and/or

provide a privilege log for any responsive materials withheld as privileged so that the Attorney General could assess the basis for the privilege asserted.

Planned Parenthood did not provide any information or documentation requested by the CID. Instead, on March 31, 2023, Planned Parenthood filed its Petition to Set Aside Civil Investigative Demand, which alleged that the CID failed to comply with the Missouri Merchandising Practices Act ("MMPA") requirements for a CID; that it exceeded the MMPA's limits on the scope of permissible inquiry; that it was outside the scope of the Attorney General's regulatory authority; and that it violated Planned Parenthood's constitutional rights.

Planned Parenthood objected to the CID as a whole and sought a declaratory judgment that the CID was not properly brought under the MMPA and violated the MMPA, that it was preempted by the authority of the Missouri Division of Professional Registration for the Healing Arts ("Board of Healing Arts"), and that it violated the United States and Missouri constitutional protection against unreasonable searches and seizures and violated Planned Parenthood's due process rights. Planned Parenthood requested the circuit court set aside the CID or, in the alternative, modify it by limiting the scope of the requests for information and documents.

---

transgender surgery, parental consent, and the tracking of adverse events. In addition, the request sought information about the billing of a publicly funded healthcare program for services it had provided. The requests also sought general information such as the curricula vitae and resumes of Planned Parenthood's providers and staff and an organizational chart of the organization.

On May 18, 2023, the Attorney General filed its Answer and Counterclaim against Planned Parenthood seeking enforcement of the CID. In its counterclaim, the Attorney General asserted its authority under section 407.040.1 to serve a CID "not only on Subject, but also upon *any person* who is believed to have information . . . relevant to the alleged or suspected violation" and essentially repeated the language of the CID, alleging that the Attorney General believed that Planned Parenthood had such information relevant to its investigation. The counterclaim also alleged the Attorney General's beliefs that Planned Parenthood and Washington University Pediatric Transgender Center discussed services and referred services to each other and that, based on its investigation of the Pediatric Transgender Center, Planned Parenthood engaged in similar conduct relevant to the Attorney General's investigation into MMPA violations. The counterclaim further asserted that, in accordance with section 407.040.2, the CID did not "[r]equire the disclosure of any documentary material that would be privileged or which, for any other reason, could not be required by a subpoena duces tecum issued by a Missouri court."

On July 3, 2023, the parties filed a stipulation with the circuit court stating their agreement that no discovery or evidentiary proceedings were necessary "as it appears the case can be decided *as a matter of law based on the pleadings and briefs*." (Emphasis added.) The parties stated their intent to file cross-dispositive motions in the case and requested a briefing schedule. In accordance with the briefing schedule ordered by the circuit court, the parties filed cross-motions for judgment on the pleadings and fully briefed both motions.

4

The circuit court entered its Judgment on February 13, 2024, denying Planned Parenthood's motion and granting the Attorney General's motion. The circuit court ordered Planned Parenthood to comply with the CID within thirty days or as otherwise agreed by the parties. On March 8, 2024, the circuit court granted Planned Parenthood's Unopposed Motion to Stay Execution of Judgment pending the exhaustion of the parties' appellate rights. Planned Parenthood then filed this appeal.

## Points on Appeal

Planned Parenthood asserts seven points on appeal, claiming that the circuit court erred by:

I.    concluding that the CID was properly issued under the MMPA because medical goods and services do not meet the statutory definition of "merchandise" under the Act;

II.   failing to find that the Attorney General is preempted from directing a CID at Planned Parenthood because the Board of Healing Arts alone is charged with providing oversight to healthcare providers;

III.  enforcing the CID when it violated Planned Parenthood's due process rights and protection from unreasonable searches and seizures because the CID was unreasonable, did not seek relevant information, and was too broad and indefinite;

IV.   incorrectly determining that Planned Parenthood did not dispute that the CID complied with the statutory requirements of the MMPA;

V.    failing to treat Planned Parenthood's well-pleaded facts as true and improperly considering information outside the operative pleadings in entering its judgment;

VI.   enforcing the CID because it required Planned Parenthood to disclose protected patient information and personal, confidential medical information; and

5

VII.    refusing to consider Planned Parenthood's alternate request to modify the CID so as to prevent the disclosure of private healthcare information.

**Standard of Review**

"The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Norman v. Mo. Dep't of Corr.*, 601 S.W.3d 295, 297 (Mo. App. W.D. 2020) (quoting *Mo. State Conf. of NAACP v. State*, 563 S.W.3d 138, 146 (Mo. App. W.D. 2018)). This Court reviews *de novo* the circuit court's grant of a motion for judgment on the pleadings without deference to the circuit court's judgment. *State ex rel. Koster v. Charter Commc'ns, Inc.*, 461 S.W.3d 851, 854 (Mo. App. W.D. 2015).

**Analysis**

Because Planned Parenthood's motion for judgment on the pleadings sought to set aside the CID while the Attorney General's motion for judgment on the pleadings sought enforcement of the CID and because both parties stipulated that the material facts were undisputed, the only question raised by both motions concerns whether the Attorney General's issuance of the CID to Planned Parenthood was lawfully proper in form and substance.

The MMPA authorizes the Attorney General to issue subpoenas, called civil investigative demands or CIDs, to investigate potential violations of the Act. § 407.040.1; *State ex rel. Ashcroft v. Goldberg*, 608 S.W.2d 385, 386 (Mo. banc 1980). The Attorney General may issue a CID "[w]hen it appears to the attorney general that a person has engaged in or is engaging in any method, act, use, practice or solicitation

6

declared to be unlawful by [the MMPA] or when he believes it to be in the public interest that an investigation should be made . . . ." § 407.040.1. In other words, CIDs "provide a form of pretrial discovery for the benefit of the attorney general." *Goldberg*, 608 S.W.2d at 388.

CIDs are not independently enforceable, and the Attorney General, pursuant to section 407.090, must seek a court order to require a recalcitrant recipient of the CID to respond. *Charter Commc'ns*, 461 S.W.3d at 857. And a recipient of a CID may petition the circuit court to modify or set aside the CID. § 407.070.

Briefing by both parties on appeal combines some of the points identified above, and because some of these points overlap or can be addressed together, we take them up in that same manner, albeit in a different order.

**Points VI and VII**

Planned Parenthood's sixth allegation of error asserts that the CID is improper and unduly broad because it unlawfully requires Planned Parenthood to disclose "protected patient information" and "breach its duties to its patients and produce personal, confidential information." Point seven asserts that the CID is unduly burdensome because it is not restricted to information that would protect Planned Parenthood's "patients from having their private healthcare information disclosed." Appellant's reply brief makes explicit that Planned Parenthood's claim of error is essentially the same for both points and in other claimed points of error—that the CID is unlawful because it seeks patient medical information that is privileged and confidential. We note that Planned Parenthood did not provide to the circuit court an explanation of the unduly

7

burdensome nature of the CID requests; irrespective, there is no merit to Planned

Parenthood's arguments in these points relied on.

First, the CID *on its face* does not require the production of privileged documents.

Instruction No. 9 explicitly informs Planned Parenthood of this fact:

> If You believe that You have responsive materials that are privileged, You must produce a privilege log that identifies each Document or communication, the basis for withholding it, and sufficient information to permit the Attorney General's Office to assess whether it is privileged.

Further, the Attorney General made clear in its counterclaim, citing section 407.040,[4] that

the CID did not "[r]equire the disclosure of any documentary material that would be

privileged."

Making Planned Parenthood's argument on appeal even more of a mystery is the

fact that Planned Parenthood won this argument—to the extent that there was one—

below. The circuit court's judgment, noting both the prohibition in Missouri law

authorizing CIDs and the Attorney General's assurance that the CID did not seek the

production of privileged information, concluded that "Planned Parenthood is under no

obligation to provide such information."[5] Thus, Planned Parenthood's claims that the

---

[4] "No civil investigative demand shall . . . [r]equire the disclosure of any documentary material which would be privileged or which, for any other reason, could not be required by a subpoena duces tecum issued by a court of this state." § 407.040.3(2).

[5] Indeed, such protections are also consistent with the protections afforded the physician-patient relationship under Missouri law. *See, e.g.*, *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 567 (Mo. banc 2006) ("The [physician-patient] privilege applies to medical records and all aspects of discovery."); *State ex rel. Stinson v. House*, 316 S.W.3d 915, 919 (Mo. banc 2010) (stating that physician-patient privilege applies to all circumstances concerning information acquired from patient, regardless of whether information will be used against patient).

CID requires it to produce protected health information and to breach its duties to its patients by producing confidential and privileged information are not supported by the instructions of the CID, the statute authorizing CIDs, or the judgment of the circuit court. "A party cannot complain on appeal when it receives all the relief [it] requested [from the trial court]." *Forester v. Dir. of Revenue*, 85 S.W.3d 122, 125 (Mo. App. W.D. 2002).

Finally, Planned Parenthood's argument that "there is no guarantee that the [Attorney General] would not demand such [privileged] information" is insufficient to raise a cognizable issue on appeal at this stage of the proceedings. *See Barkley v. McKeever Enters., Inc.*, 456 S.W.3d 829, 839 (Mo. banc 2015) ("Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court."). Simply put, this Court will not resolve *today* any *future* dispute[6] regarding as of yet unidentified documents listed in a privilege log yet to be compiled and produced by Planned Parenthood.

Points VI and VII are denied.

---

[6] As explained in the text of the CID itself and the circuit court's judgment, both contemplate that Planned Parenthood may in the future assert claims that particular documents or information responsive to the CID are privileged or otherwise not subject to disclosure. Accordingly, it would be premature for this Court, at this time, to express any view concerning whether particular responsive information may be exempt from disclosure under Missouri's physician-patient privilege, § 491.060(5), under the Health Insurance Portability and Accountability Act of 1996, *see State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 152-55 (Mo. banc 2010), or under other legal principles. If Planned Parenthood claims that particular records or information are exempt from disclosure in its future response to the CID, the merit of its claims can be addressed in enforcement proceedings brought by the Attorney General pursuant to section 407.090.

**Point IV**

Planned Parenthood claims in its fourth point on appeal that the circuit court's judgment erroneously suggests that Planned Parenthood did not dispute that the CID complied with the statutory requirements of the MMPA. Planned Parenthood misapprehends the language and pronouncement of the circuit court's judgment.

It is clear from both the context and explicit language of the judgment that the circuit court's statement in its judgment—"Planned Parenthood did not dispute the CID complied with the statutory requirements provided for in the Statute"—referred to the circuit court's determination that the *procedural* form of the CID itself contained the information required by the MMPA. The MMPA requires that each CID:

(1)  State the statute and section thereof, the alleged violation of which is under investigation, and the general subject matter of the investigation;

(2)  Describe the class or classes of information, documentary material, or physical evidence to be produced thereunder with reasonable specificity so as fairly to indicate the material demanded;

(3)  Prescribe a return date by which the information, documentary material, or physical evidence is to be produced; and

(4)  Identify the members of the attorney general's staff to whom the information, documentary material, or physical evidence requested is to be made available.

§ 407.040.2. The circuit court then recites in its judgment the information from the CID that corresponds with these requirements:

The CID stated the [Attorney General] "believes it to be in the public interest that an investigation be made to ascertain whether the Washington University Pediatric Transgender Center at St. Louis Children's Hospital ("Subject"), its agents or employees, or others in the state providing similar

10

services have engaged in or are engaging in any practices declared to be unlawful by § 407.020, RSMo." The [Attorney General] further stated it "has reason to believe that Subject or others in the state may have used deception, fraud, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of material facts within the scope of the Missouri Merchandising Practices Act."

The circuit court's judgment simply concluded that there was no dispute that, on its face, the *procedural* form of the CID contained language purporting to address each of the four statutory requirements.

The circuit court's judgment, however, recognized Planned Parenthood's broader *substantive* objection to the issuance of the CID—that it was not authorized by the MMPA. In fact, as Planned Parenthood observes in its appellate briefing, the circuit court began its judgment by stating that "Planned Parenthood alleged the CID failed to comply with the Missouri Merchandising Practices Act."

While it is true that Planned Parenthood seeks to characterize its complaint with the CID as the failure to comply with the statutory requirements of section 407.040.2, the arguments made are nothing more than an attempt to re-write the statutory language of section 407.040.2. In its Petition to Set Aside CID, Planned Parenthood alleged that the CID failed to comply with the statutory requirements of section 407.040.2—focusing only on subsection (1)—as follows:

19. The CID at issue references Mo. St. 407.020 (unlawful practices) but does not set forth any *specific* alleged violation of that statute by Washington University Pediatric Transgender Center that is under investigation or the general subject matter of the investigation.

20. The CID does not go further, as is required, and *specify what deceptive practices PPGP allegedly committed in Missouri that the [Attorney General] purportedly needs to investigate*. The Attorney

11

General has not described *any alleged violations of law committed by PPGP in Missouri* that justify the CID.

(Emphasis added.) Similarly, in its legal suggestions filed with the circuit court supporting its request for judgment on the pleadings, the only argument made by Planned Parenthood regarding the specific requirements of section 407.040.2(1) was its claim that the CID was deficient because it did not "define any unlawful practice under the MMPA that [Planned Parenthood] had allegedly violated." Planned Parenthood's other complaints were directed at the reasonableness and scope of the requests, and these topics are addressed elsewhere in today's ruling.

What Planned Parenthood complained of and what the circuit court understood was that Planned Parenthood's complaint extended *beyond* the procedural requirements of section 407.040.2(1), and we believe that to be an accurate assessment of Planned Parenthood's arguments attacking the CID.

Irrespective, even when Planned Parenthood frames its claim as a violation of the statutory text of section 407.040.2(1), it adds requirements that are not present in the statutory text.

For example, the statute does *not* require that the Attorney General state *with specificity* the alleged violation being investigated. Rather, it simply requires that the CID state "the statute and section thereof, the alleged violation of which is under investigation, and the *general* subject matter of the investigation." § 407.040.2(1) (emphasis added).

12

The CID does so, stating both the statute and section thereof: "Missouri Merchandising Practices Act" and "§ 407.020, RSMo." It states the alleged violation under investigation and the general subject matter of the investigation: "practices declared to be unlawful by § 407.020, RSMo. . . . The Attorney General has reason to believe that Subject *or others in the state* may have used deception, fraud, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of material facts within the scope of the Missouri Merchandising Practices Act." (Emphasis added.) The CID also explicitly referenced the whistleblower affidavit, which contained detailed allegations concerning the provision of services to transgender minors at Washington University Pediatric Transgender Center. Besides the reference to the whistleblower affidavit, the CID's definitions (particularly the definitions of "Clients" and "Your Services"), as well as the information requests themselves, make unmistakably clear that the subject matter of the Attorney General's investigation was the provision of medical treatment services to transgender minors. Nothing more was required.

As the circuit court properly concluded in its judgment, citing *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 365 (Mo. App. 1973): "No authorizing statute requires the [Attorney General] to provide details of an investigation or provide facts in support of an allegation, for that is the purpose of an investigation and a CID: to gather such facts, if they exist, or establish such allegations are unfounded." In fact, the Attorney General's CID provided far more notice of the nature of the allegations it was investigating than the statement above—it incorporated by reference an eighty-six-paragraph whistleblower report detailing the subject matter of the investigation.

13

Nor does the statute require the Attorney General to specify in the CID any deceptive practices that Planned Parenthood itself "allegedly committed in Missouri that the [Attorney General] purportedly needs to investigate." In fact, the statute does not require that the recipient itself *even be* the subject of an investigation such that the alleged violation must focus on the recipient's conduct: a CID may be served upon "*any person* who is believed to have information, documentary material or physical evidence relevant to the suspected violation." § 407.040.1 (emphasis added); *see also, e.g., Charter Commc'ns*, 461 S.W.3d at 859, n.6 ("However, *Charter*[, the recipient of a CID,] is not accused or suspected of violating any laws; rather it is Charter's *subscribers* that are being investigated.").

Planned Parenthood is "any person": the CID informed Planned Parenthood that it was a recipient because the Attorney General "believes that you have information, documentary material, and/or physical evidence relevant to the investigation described above." Indeed, Planned Parenthood cites no authority to suggest that section 407.040 requires otherwise.

Our *de novo* review of the CID confirms the circuit court's conclusion that there was no real dispute that the CID met the *procedural* requirements of section 407.040.2. Point IV is denied.

**Point V**

Planned Parenthood's fifth point on appeal argues that the trial court erred by not treating Planned Parenthood's pleaded facts as true when it ruled on the Attorney General's counterclaim and by relying on new information outside the pleadings to

14

determine that Planned Parenthood is itself now a subject of the Attorney General's investigation. Because the circuit court did neither, we reject this argument.

It is true, as Planned Parenthood asserts, that in moving for judgment on the pleadings, "the movant concedes, for purposes of the motion, that all well-pleaded facts contained in the non-moving party's petition are true." *French v. Mo. Dep't of Corr.*, 601 S.W.3d 299, 301 (Mo. App. W.D. 2020) (citing *Garr v. Mo. Bd. of Prob. & Parole*, 211 S.W.3d 191, 192 (Mo. App. W.D. 2007)). It is also true, however, that "the movant does not admit to legal conclusions or construction of the subject matter." *Mitchell v. Nixon*, 351 S.W.3d 676, 680 (Mo. App. W.D. 2011).

There is a fundamental problem with Planned Parenthood's complaint, however. At no place in its briefing does Planned Parenthood direct the Court's attention to any particular fact in its pleadings that it says the circuit court did not treat as true; rather, it states generally, "The Judgment does not *indicate* the trial court did so." An appellant's argument must connect the legal principles together with the facts in the record to make their argument, and this Court is "not in a position to comb the legal file for facts to which we can tie the mere recitations of law" that an appellant sets forth to understand the appellant's argument. *Sharp v. All-N-One Plumbing*, 612 S.W.3d 240, 245 (Mo. App. W.D. 2020).

Moreover, we do not find support for Planned Parenthood's complaint that the circuit court improperly considered matters outside the record to determine that Planned

Parenthood was also a subject of an investigation by the Attorney General.[7] Planned Parenthood makes a rather curious argument here—asserting that the circuit court "incorrectly articulated in its Judgment that 'The [Attorney General] *alleged in its counterclaim* that Planned Parenthood is a subject of the [Attorney General]'s investigation' and that it incorrectly stated 'The [Attorney General] *pled* that Planned Parenthood is now a subject of its investigation.'" That is, however, *exactly* what the Attorney General alleged in its counterclaim, to-wit:

> 16. Based on information uncovered from the investigation into [the] Subject, as well as other information, the Attorney General also *believes that Planned Parenthood* may have engaged in or is engaging in methods, acts, uses, practices, or solicitations declared to be unlawful under the Merchandising Practices Act, § 407.020, RSMo.

> 17. Accordingly, the Attorney General served Civil Investigative Demand 23-25 on Planned Parenthood ("the CID"). . . . The CID states that the Washington University Pediatric Transgender Center is a subject of investigation, *but also states that other entities in Missouri are being investigated.*

(Emphasis added.) Consequently, the circuit court's statements in its judgment were not based on matters outside the record but were based on the operative pleadings of the case.

Conversely, we understand the gist of Planned Parenthood's actual argument is not that the circuit court's statements are *incorrect* recitations of the operative pleadings but

---

[7] As explained in our analysis of Point IV in this opinion, it is not necessary that Planned Parenthood be the subject of the investigation for it to be a proper recipient of a CID; rather, Planned Parenthood need only have information related to the subject of the Attorney General's investigation. We understand the significance of Planned Parenthood's status as the subject of the investigation here to be relevant to Planned Parenthood's argument that the scope of the CID is unreasonable, which we address in our analysis of Planned Parenthood's third claim of error on appeal.

16

instead that the statements themselves are *wrong* because the *CID itself* did not explicitly

identify Planned Parenthood as the subject. Even if it were a statutory requirement that

Planned Parenthood be "a subject" and not merely "any person" having information

relating to the CID's investigatory topic (and it is not, as we have previously discussed

herein), the circuit court was not restricted to considering only the allegations in the CID

when ruling on the dueling motions for judgment on the pleadings because the parties

entered into a stipulation detailing which factual matters the parties deemed undisputed

and where the circuit court could locate those undisputed facts.[8] That said, the CID

itself—irrespective and apart from any pleadings below—expressly states that entities

performing services similar to Washington University Pediatric Transgender Center were

also under investigation.

In the stipulation filed with the circuit court, both parties stipulated that no

discovery was necessary "as it appears the case can be decided as a matter of law based

on the *pleadings and briefs*." In addition, the stipulation specifically contemplated that

the circuit court would "resolve the parties' claims and counterclaims." Moreover, when

Planned Parenthood filed its motion for judgment on the pleadings, it advised the circuit

---

[8] Absent the stipulation offered by the parties to the circuit court below, our analysis on this topic may have been different. However, we will not permit a party to invite a circuit court to review certain facts or pleadings and then permit that same party to claim error when the circuit court does what the party requested. "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *Davis v. Davis*, 582 S.W.3d 100, 106 (Mo. App. W.D. 2019) (internal quotation marks omitted); *accord Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 525 (Mo. banc 2017) ("It is axiomatic that a [party] may not take advantage of self-invited error or error of [its] own making."); *Rinehart v. Mo. Dep't of Corr.*, 669 S.W.3d 679, 686 (Mo. App. W.D. 2023) (same).

court that "Judgment on the pleadings is proper in this case because the questions before the Court are questions of law, and the material facts are not in dispute." By its very definition, a judgment on the pleadings is a judgment on the operative pleadings of the case. Where both parties file dueling motions for judgment on the pleadings, "each party thereby admit[s] the facts well pleaded in the pleadings of the other" for purposes of the motions. *Kerkemeyer v. Midkiff*, 299 S.W.2d 409, 410 (Mo. banc 1957).

Given the admissions of fact that Planned Parenthood tendered to the circuit court in Planned Parenthood's Petition to Set Aside CID, there was sufficient evidence from which Planned Parenthood would have had notice that it was a subject of the investigation at the time the Attorney General submitted the CID to Planned Parenthood. It is true, as Planned Parenthood asserts, that the CID specifically identifies Washington University Pediatric Transgender Center at St. Louis Children's Hospital as the "Subject" of its investigation. It is equally true, however, that the CID is not restricted to that entity alone as engaging in practices outlawed by the MMPA—the CID also broadly identifies "others in the state providing similar services" as being the subject of the investigation. The CID goes on to advise Planned Parenthood that:

> The Attorney General has reason to believe that Subject *or others* in the state may have used deception, fraud, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of material facts within the scope of the Missouri Merchandising Practices Act.

Having received a CID directed at the "Subject or others in the state" that sought specific information about Planned Parenthood's *own* provision of transgender care services

18

(including the billing for such services) and having provided those services,[9] Planned Parenthood had sufficient information from which it could readily infer from the four corners of the CID that it was one of the "others" being investigated by the Attorney General.

Point V is denied.

**Points I and II**

Planned Parenthood asserts that the circuit court erred in enforcing the CID because the Attorney General did not have authority to issue the CID where the subject of the investigation involves medical goods and services. In its first point, Planned Parenthood argues that the CID was not authorized because "medical goods and services" are not "merchandise" under the MMPA; in its second point, Planned Parenthood argues that a CID under the MMPA is preempted by the Board of Healing Arts' oversight of healthcare providers. Again, we disagree.

The MMPA broadly protects consumers by expanding the common law definition of fraud "to preserve fundamental honesty, fair play and right dealings in public transactions." *Watson v. Wells Fargo Home Mortg., Inc*., 438 S.W.3d 404, 407 (Mo. banc 2014) (quoting *State ex rel. Danforth v. Indep. Dodge, Inc*., 494 S.W.3d 362, 368 (Mo. App. W.D. 1973)). It makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the

---

[9] In its Petition to Set Aside CID, Planned Parenthood affirmatively stated that its clinics offer gender affirming hormone care to patients over the age of 18 "or, occasionally and with parental consent, patients 16 or 17 years old" and that they had provided minor gender affirming care in the past."

19

concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." § 407.020.1. The terms of the statute are "unrestricted, all-encompassing and exceedingly broad" and "cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co. v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). The statute and associated regulations paint in broad strokes to prevent evasion due to overly meticulous definitions. *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. App. S.D. 2006).

The circuit court correctly concluded that medical goods and services are "merchandise" for the purposes of the MMPA. The MMPA defines "merchandise" to include "*any* objects, wares, goods, commodities, intangibles, real estate or services." § 407.010(4) (emphasis added). "Medical goods and services meet the statutory definition of merchandise as defined by section 407.010(4)." *Freeman Health Sys. v. Wass*, 124 S.W.3d 504, 507 (Mo. App. S.D. 2004) (MMPA claim brought against health system for fraud and deception related to charges for healthcare services); *see also, e.g., Breeden v. Hueser*, 273 S.W.3d 1, 6 (Mo. App. W.D. 2008) (patients brought action for violation of MMPA asserting fraud against physician who treated and billed patients for single-use chemotherapy vials that were used on multiple patients); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 711 (Mo. App. W.D. 2009) (plaintiffs prescribed Vioxx filed class action claim against drug manufacturer, claiming manufacturer's failure to disclose health risks constituted unlawful merchandising under MMPA).

Planned Parenthood's argument that a 2020 amendment to section 407.025 to exclude from the MMPA private actions for medical malpractice to "recover damages for personal injury or death" prohibits the Attorney General's investigation of Planned Parenthood here is also unavailing. This amendment did not in any way curtail the Attorney General's authority to investigate wrongdoing through the use of a CID or seek civil penalties for violations of the MMPA or sue for an injunction before a violation occurs—that authority lies in other provisions of the MMPA. *See* §§ 407.040, 407.100.1, .6. The General Assembly's enactment of a limited exclusion to the MMPA, with respect to private parties' suits to recover damages for medical malpractice, supports the conclusion that—but for the limited exception—healthcare services *are* otherwise subject to the MMPA.

Planned Parenthood next argues that the passage of the Missouri Save Adolescents from Experimentation Act of 2023 ("the SAFE Act")—which subjects healthcare providers who provide gender transition surgery or prescribe drugs to minors to discipline by their licensing body and establishes the provision of hormones or puberty blockers as the basis of a medical malpractice claim—removes from the MMPA any authority of the Attorney General to investigate care related to those claims. It did not. The MMPA allows the Attorney General to enforce any violation of "*any . . .* statutes or common law of this state," so long as a violation of that other statute "[p]resents a risk of, or causes, substantial injury to consumers." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725 (Mo. banc 2009) (quoting 15 CSR 60–8.020(1)); *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013) (same); *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d

82, 84 (Mo. banc 2013) (same). In other words, where a violation of a state or federal statute presents a risk to consumers, violation of that statute is also a violation of the MMPA and can be investigated through a CID. This rule "reflect[s] th[e] literal reading of the statute" that the Missouri Supreme Court has adopted. *Ports Petroleum*, 37 S.W.3d at 240.

Neither does the fact that Planned Parenthood's healthcare providers might be subject to discipline preclude an investigation by the Attorney General for violations of the MMPA. Citing as an example *Breeden v. Hueser*, the circuit court correctly observed below, "[w]hile healthcare agency oversight could overlap with MMPA investigations and both necessarily examine the actions of healthcare providers, one does not preclude the other." Oversight of healthcare providers by the Board of Healing Arts does not preclude an MMPA claim for violations of the Act. *See, e.g., Breeden*, 273 S.W.3d at 6 (MMPA claim, fraud, and civil conspiracy claims brought against physician for not administering proper dosage, representing that proper dosage was administered, and billing patient for full dosage of chemotherapy drugs).[10]

Finally, the Attorney General's investigation does not target claims of medical malpractice or the discipline of healthcare providers by their professional boards. Rather,

---

[10] Of additional note, section 407.020.2(2) specifically excludes from the MMPA certain financial and insurance entities subject to regulation under other statutes. There is no similar exclusion for healthcare entities subject to the Board of Healing Arts' regulation. Recognizing the "expression unius" principle, Missouri precedent holds that, "[w]hen statutory exceptions are plainly expressed, courts cannot add to the exceptions or exclusions beyond those explicitly provided." *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 498 (Mo. App. W.D. 2010) (alteration in original) (quoting *Smith v. Mo. Local Gov't Emps. Ret. Sys.*, 235 S.W.3d 578, 582 (Mo. App. W.D. 2007)).

the stated purpose of the investigation is focused squarely on what the MMPA prohibits—the "deception, fraud, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of material facts" regarding the transgender care provided by Washington University Pediatric Transgender Center and "others in the state providing similar services." The requests set out in the corresponding CID demonstrate this intent. They include requests regarding the intake process of clients, policies regarding parental consent, any solicitation and promotional materials provided to clients and prospective clients, and information about Planned Parenthood's billing of publicly funded healthcare programs for such services.

Given the broad, remedial nature of the MMPA and the legal precedent explicitly stating and demonstrating that the Act includes within its scope claims related to medical care and services, Points I and II are denied.

**Point III**

Planned Parenthood's third claim of error is primarily aimed at the reasonableness of the scope of information sought by the CID. Planned Parenthood claims that the CID violates "the Fourth Amendment's proscription on unreasonable searches and seizures and the Fifth Amendment's Guarantee of due process of law" because it seeks information unrelated to the sale or advertisement of merchandise and seeks privileged, personal, and confidential information about Planned Parenthood's patients.

To comply with the Fourth Amendment's reasonableness requirement, a CID, which is an administrative subpoena, must (1) comply with the statute authorizing it, (2) seek information that is relevant to the administrative inquiry, and (3) not be too

23

indefinite or too broad. *Charter Commc'ns*, 461 S.W.3d at 859. The Attorney General's CID to Planned Parenthood meets these requirements. Section 407.040 of the MMPA sets out the requirements the Attorney General must meet to issue a CID. In our discussion of Point IV, we have rejected Planned Parenthood's claim that the CID did not meet the requirements of section 407.040.2(1), and Planned Parenthood has not asserted any other violation of subsection 2.

Planned Parenthood's claims of error in Point III relate to two prohibitions that govern requests for information and documents under the MMPA:

No civil investigative demand shall:

(1)     Contain any requirement which would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of this state; or

(2)     Require the disclosure of any documentary material which would be privileged or which, for any other reason, could not be required by a subpoena duces tecum issued by a court of this state.

§ 407.040.3. Planned Parenthood's complaint that the CID is unreasonable and, therefore, violates its constitutional rights because it seeks irrelevant information and is overly broad, and its complaint that the CID improperly seeks the disclosure of privileged material implicate these two prohibitions.

As we discussed in our analysis of Points VI and VII, neither the CID nor the circuit court's judgment requires the disclosure, at this juncture, of any privileged, confidential, or personal health information. Consequently, the focus of our analysis in Point III relates to the scope of information sought by the CID.

24

First, Planned Parenthood argues that the CID seeks irrelevant information and is overly broad because the requests themselves do not relate to the sale or advertisement of merchandise by Washington University. Planned Parenthood interprets the MMPA too narrowly. Indicative of the broad scope of the MMPA's reach, the definition of "advertisement" under the MMPA includes the "attempt by publication, dissemination, solicitation, circulation, *or any other means* to induce, directly or indirectly, any person to enter into *any obligation* or acquire any title or interest in any merchandise." § 407.010(1) (emphasis added). And, as we detailed in our discussion of Point IV previously, we reject Planned Parenthood's attempt to exclude itself as a subject of the Attorney General's investigation that is contemplated by the CID. Simply put, Planned Parenthood has admitted in its pleadings in this case that it falls squarely within the CID phrase, "others in the state providing similar services."

Moreover, the purpose of the CID procedure under the MMPA is to provide the Attorney General with broad investigative authority and to provide the Attorney General with a form of pretrial discovery. *Goldberg*, 608 S.W.2d at 388. And the government, with its subpoena power (which is more analogous to the grand jury), "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 818 (8th Cir. 2012) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)).

Consequently, the Attorney General is authorized by the MMPA to issue an enforceable CID to "any person who is believed to have information, documentary material, or physical evidence *relevant to* the alleged or suspected violation." § 407.040.1 (emphasis added). "[T]he question of an administrative subpoena's relevance is not a question of evidentiary relevance." *Whispering Oaks*, 673 F.3d at 818. "The standard for determining the relevance of a subpoena's requests is not particularly burdensome, and indeed, a subpoena 'should be enforced when the evidence sought by the subpoena is not plainly incompetent or irrelevant to any lawful purpose of the agency in the discharge of its duties.'" *Id.*

That the requests, in isolation, may well appear on the surface to seek information related to the practice of medicine is not the end of our query but the starting point. To evaluate the relevance of the information sought, we first look at the nature of the Attorney General's investigation. The CID did more than inform Planned Parenthood that the Attorney General was investigating its services related to hormone therapy and specialty care, surgical procedures, social work and legal assistance, and behavioral health referrals that might violate the MMPA; it specifically referenced the factual allegations giving rise to its investigation of Washington University Pediatric Transgender Center and "others" providing similar services by referencing and incorporating the sworn affidavit of a whistleblower, which detailed a variety of practices that, if confirmed, could suggest deception and fraud in violation of the MMPA.

For example, the CID suggested via the whistleblower allegations that Washington University Pediatric Transgender Center and "others in the state providing similar

26

services," may not ascertain whether adults accompanying minors have legal authority to consent to medical services—even when those providing these services have reason to know the adult does not possess such authority. Given the Attorney General's belief that Planned Parenthood "may have engaged or is engaging" in similar conduct, the requests directed at Planned Parenthood regarding its intake process, operating policies with regard to the standard of care for clients, and its policies requiring written consent and any applicable custody arrangements cannot be said to be "plainly incompetent or irrelevant to any lawful purpose." Planned Parenthood's complaint about the Attorney General's request for "all Documents where Your faculty or staff have reported Child abuse as mandatory reporters" must also be understood in the context of the information possessed by the Attorney General and forming the basis of its investigation—the whistleblower allegations that physicians may have treated parents "as if the parents were abusive, uneducated, and willing to harm their own children" by refusing to consent to hormone therapy or puberty blockers. Given this context, the information sought by the CID meets the relevance standard governing administrative subpoenas.

The same complaint presumably could have been made about the MMPA allegations lodged against the defendant physician in *Breeden v. Hueser*. There, the defendant physician was charged with violating the MMPA by devising and executing "a scheme to defraud his patients by treating multiple patients with doses of chemicals pulled from a single vial, where common medical practice and government regulations dictated that a new vial was to be used for each treatment." 273 S.W.3d at 5. The scheme then involved "charging each patient the full price of a new vial for each

27

treatment but sometimes providing them with the left-over chemicals from another patient's treatment." *Id*. There is no doubt that the allegations and the discovery sought in that case involved matters of the physician's practice of medicine. In fact, the trial court dismissed plaintiffs' petition as being barred by the relevant two-year statute of limitations for medical malpractice claims because "the action alleged is one of malpractice related to health care." *Id*. at 6.

On appeal, this Court reversed the trial court's dismissal, concluding that the actions of the defendant physician were "only incidentally related to the delivery of health care," but the "gravamen of the action here is fraud due to the alleged deceit of Defendant [physician] to gain a monetary benefit." *Id*. at 8. As a result, the statute of limitations governing fraud, not the medical malpractice statute of limitations, applied. *Id*. Aside from the conclusion in *Breeden v. Hueser* that the MMPA claim was *not* preempted by the authority of the Board of Healing Arts to discipline medical doctors in the state and neither was a claim under those facts to be brought exclusively as a medical malpractice action, the *Breeden v. Hueser* case illustrates that actions asserting fraud and deceit under the MMPA may well involve the provision of medical care.

By extension, the information sought by the CID here—requests that on their surface seek information about the provision of medical care—are appropriate when the gravamen of those requests is to investigate conduct in violation of the MMPA related to the provision of healthcare services.

Regarding Planned Parenthood's complaint that the CID seeks information about services that it does not provide—albeit services relevant to the stated subject of the

investigation—the CID cannot be held to be unreasonable or unduly burdensome when the simple response by Planned Parenthood in such situation would necessarily be that it has nothing responsive to the request. Furthermore, a request regarding the billing practices of Planned Parenthood for any of the services identified in the CID is clearly within the Attorney General's purview under the MMPA. *See, e.g., Breeden*, 273 S.W.3d at 6 (discussed *supra*). Finally, Planned Parenthood's general complaint that the requests were not limited in time is not directed at any particular request, nor does Planned Parenthood explain what undue burden it suffers as a result. The CID does not violate Planned Parenthood's Fourth Amendment rights.[11]

Point III is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.

---

[11] Planned Parenthood's Fifth Amendment due process claim is undeveloped. Because the CID complied with the section 407.040's requirements and because Planned Parenthood has been afforded its rights under section 407.070 to challenge the issuance of the CID, it has received all due process afforded it by the Constitution. *See Lewandowski v. Danforth*, 547 S.W.2d 470, 472-73 (Mo. banc 1977) (holding that procedures under the CID statute provided the subject organization its procedural due process rights where the CID complied with section 407.040 requirements and the organization exercised its right under section 407.070 to seek review of the CID).